## FRED ELLSWORTH v. STATE.

### No. A-1656.   Opinion Filed January 27, 1914.

#### (137 Pac. 1189.)

1.   **INCEST—Sufficiency of Evidence.** In a prosecution by a daughter against her father for incest, where it appears that she was over the age of consent when the act charged was committed, and her testimony is corroborated by proof of material facts and corroborating circumstances, connecting the defendant with the commission of the crime, the evidence is held sufficient to sustain the verdict and judgment, and that no reversible error was committed on the trial.

2.   **INCEST—Evidence—Prior Acts.** In a prosecution for incest, evidence tending to establish acts of incest at times other than and prior to that relied on for the conviction is admissible as indicating continuousness of the illicit relation and as tending to corroborate the testimony of the prosecutrix as to the particular act relied on for conviction.

*Appeal from District Court, Stephens County;*
*Frank M. Bailey, Judge.*

Fred Ellsworth was convicted of incest, and appeals. Affirmed.

*Womack & Brown, Wilkinson & Morris,* and *Stuart, Cruce & Gilbert,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, J. This appeal is prosecuted from a conviction had in the district court of Stephens county upon an information charging the defendant, Fred Ellsworth, with the crime of incest alleged to have been committed with his daughter Flora Ellsworth in said county on or about the 25th day of July, 1911. The verdict was guilty as charged, leaving his punishment to be assessed by the court. On the 18th day of November, 1911, the court pronounced judgment and sentenced the defendant to imprisonment in the penitentiary at McAlester for the term of ten years. To reverse the judgment, an appeal was perfected.

The only question worthy of notice which the record presents goes to the merits of the case. It is claimed by defendant's counsel, in an elaborate argument, that the evidence does not warrant his conviction, in that there is no sufficient corroboration of the testimony of the prosecuting witness, who must be considered as an accomplice.

The prosecution gave in evidence the testimony of Flora Ellsworth as follows: That she was the daughter of defendant and was sixteen years old March 8, 1911. That her mother died when she was an infant, and that after her mother's death she lived with her grandparents near Lexington, Okla., until she was seven years old. At that time her father, having married the second time, took her to live with him. That when she was twelve years old her father moved to the Wood Reserve in Stephens county. That when she was ten years of age her father began to have sexual intercourse with her, and that their illicit relations were continuous until Friday, July 25, 1911, which was the last time. That on that day her stepmother had gone to Marlow, taking her half-sister with her; and the act occurred in her bedroom during the afternoon. She also testified that her father slept with her off and on since she had been living with him. That her stepmother was away the winter before three weeks or a month, and her father occupied the same bed with her during that time and had intercourse with her two or three times a week. That she did not tell people about it before because he said "that if I told it on him that he would kill me." That he often cuffed and kicked her and whipped her with a strap. That he pulled her hair until large bunches came out, and made her stand while her stepmother whipped her. That he stopped her from going to school. That her stepmother usually went to town on Tuesday and Friday of each week with the butter and eggs. On cross-examination she testified that her father would come and take her out of her bed to his pallet and have intercourse with her; that this occurred so often that she could not state the number of times; that she was positive the last act took place on Friday, July 25th; that

her mother and stepsister had gone to town on that day, and Ed. McGehee, who had worked for her father about a year and a half, was in the field working; that McGehee had been her sweetheart for about six months before the defendant's arrest; that she told Mrs. Duncan, and Mr. Duncan brought her to the county seat to make the complaint, and she did not return to her father's.

George Townsend testified that he had worked for the defendant off and on for five years, the last time two years before; that he had often seen the defendant and his daughter Flora sleeping together; that the last time he had seen them sleeping together was about four years ago.

Ed McGehee testified in substance: That he had been working as a farm hand for the defendant for about a year before the prosecution was commenced. That the Ellsworth house had two rooms and there was a kitchen and smokehouse detached, and that he slept in the smokehouse. That Mrs. Ellsworth would go to Marlow twice a week, on Tuesdays and Fridays, to sell butter and eggs, and that she generally took the baby girl with her and left the defendant and his daughter Flora at home. That Mrs. Ellsworth went away on a visit, and while she was away the defendant and his daughter Flora slept in the south bedroom. That he noticed mornings that only one bed was slept in, and that it would be "disarranged and wallered up." That he had seen the defendant take his daughter Flora by the hair of the head and churn her head up against the wall. That the prosecutrix never kept company with young men, but witness had been courting her, but had never had sexual intercourse with her. That his suspicions were aroused by the fact that at one time when Mrs. Ellsworth was absent defendant sent him down in the pasture to see about an old sow that was going to find pigs, and sent the little girl along with him, while the defendant remained at the house with the prosecutrix. That another time when Mrs. Ellsworth was gone to town the little girl came out to where he was working. That during the summer he saw the defendant and the prosecutrix sleeping on a pallet in the front room.

Mrs. J. W. Turner testified, in substance, that she had lived for three years a near neighbor of the defendant; that in February, 1911, Mrs. Ellsworth went away and was gone about six weeks, and that during her absence witness was at the Ellsworth house nearly every day, sometimes early in the morning, and noticed that only one bed had been occupied; that the prosecutrix never had any young men company.

Dr. C. E. Frost testified that he was a duly licensed physician and surgeon and had practiced medicine for 36 years; that he, with Dr. Adams present, made a personal examination of the prosecutrix; that he found that the hymen had been broken down and it was not of recent occurrence; "that her sexual organs resembled those of a married woman, that was in the habit of having sexual intercourse;" that the parts had assumed a flabby nature because of friction or excessive intercourse; that "the condition of her body was that of a married woman," and whatever had been the disturbing cause had existed for some time necessarily, from the flabby condition of the vulva; that he made a subsequent examination some months after and found her general condition much improved.

Henry Crawford testified that he was a deputy sheriff and arrested the defendant in the town of Marlow some time in August, 1911; that the defendant asked him what he was arrested for; that he did not tell him; that he allowed him to go and get some one to take his team home; that he then went to the bank to get some money, and from there he went to a drug store.

W. M. Cates testified that he was sheriff; that he phoned from Duncan to Deputy Sheriff Crawford at Marlow to arrest the defendant; that shortly after the defendant called him up on the phone and wanted to know what he was arrested for, but that he refused to give him the information.

L. A. Seiver testified that he was a druggist and the defendant came into his store on the day he was arrested and asked for five or ten cents worth of strychnine, and he told him he did not have any. At the time Deputy Sheriff Crawford was standing out in front of the drug store.

Thereupon the state rested and the defendant moved the court to instruct the jury to return a verdict of not guilty on the ground "that there was a total failure of corroboration of the testimony of the prosecuting witness." The court overruled the motion and allowed an exception.

On behalf of the defendant, three or four witnesses testified that the defendant was in the town of Marlow on the afternoon of Tuesday, the 25th day of July, 1911.

The next witness on the part of the defendant was his wife, Mrs. Sara Ellsworth, who testified that since their marriage she and the defendant had slept together, and that the prosecutrix never slept with him alone. Proper predicate was laid for introducing statements which the state contended had been made by Mrs. Ellsworth to Mrs. Turner, and Miss Mollie Parham.

George Watson testified that he worked for the defendant in Cleveland county, and at that time he saw prosecutrix sitting in the lap of a man named Erwin, and that Erwin asked him not to say anything about it.

A Mr. Walker, of Pauls Valley, testified that he was at the home of the defendant in October, 1910, painting for him, and that he had seen Ed McGehee and Flora Ellsworth sitting on the bed, and that McGehee had his hands up under her clothes.

Will Brady testified that he was at the home of the defendant on the 28th day of July last, and saw the prosecutrix and a man he took to be Ed McGehee lying on the floor; that he inquired of the prosecutrix for her father, and she said that he had gone to Marlow.

Defendant, as a witness in his own behalf, denied ever having illicit relations with his daughter, and said at the time of his arrest he went into the drug store to purchase strychnine at his wife's request.

In rebuttal, Miss Mollie Parham testified: That she was 50 years old and lived with her sister, Mrs. Turner, across the section line from the defendant. That about two years ago Mrs. Ellsworth told her that the defendant had been having illicit relations with his daughter Flora Ellsworth, and that her hap-

piness had been broken up because of that. That she said, "Flora is an immoral girl, and she comes between me and Fred;" and I said, "How can she be immoral; she never leaves home;" and she said, "This goes on right under my own roof, and you will see some day that this will come to light." That she afterwards repeated the story to her.

Mrs. J. W. Turner testified that Mrs. Ellsworth, speaking about her husband's arrest, said to her: "You can just tell Miss Mollie that it is just like I told her. I have told her that often."

On accomplice testimony the court instructed the jury as follows:

"You are instructed, gentlemen of the jury, that under the law of this state a person cannot be convicted upon the testimony of an accomplice unless they be corroborated by such other evidence in the case as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. And you are instructed in this case, gentlemen of the jury, that the prosecuting witness, Flora Ellsworth, being under the law an accomplice in the crime charged against this defendant, you cannot convict the defendant upon the testimony of the said witness unless you further find from the evidence that the testimony of such witness is corroborated by such other evidence in the case as tends to connect the defendant with the commission of the offense charged in the information. And it is for the jury to say, in the light of all the evidence in the case, as to the reasonableness or unreasonableness of the evidence of the prosecuting witness and as to whether it has been corroborated by the testimony of other credible witnesses or by facts and circumstances proven in the case."

It is our opinion that the condition of the prosecutrix and the opinion of the physician who made the examination as to its probable cause corroborate the testimony of the prosecutrix, and there are other facts and circumstances brought out in the evidence calculated to substantiate and corroborate the testimony of the prosecutrix. For this reason the question of the innocence or guilt of the defendant was a question for the determination of the jury. They found the defendant guilty. No other find-

ing could well have been reached, and no good reason is shown why that finding should be disturbed.

The record does not disclose any reversible error. The judgment of conviction is therefore affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.