# LEO F. MATHERLY v. STATE.

No. A.-9210. Sept. 23, 1937.
(71 Pac. 2d 1094.)

Fred L. Patrick and W. F. Pardoe, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Everett S. Collins, Co. Atty., for the State.

BAREFOOT, J. The first error assigned by defendant is that the court erred in refusing to sustain the motion to quash the panel of jurors drawn in Creek county for the January, 1936, term of court.

It is contended: (a) That the jury list was not selected with regard to the voting strength of the several townships. (b) The jury commissioners failed to certify the voting precincts of the jurors drawn by them. No proof was offered to sustain the first proposition and defendant in his brief cites no authorities. The certificate of the jury commissioners recites:

" * * * Each being and possessing the qualifications for jurors in and for Creek county, state of Oklahoma, as prescribed by law, selecting the same from the various municipal townships of said county, as nearly as practicable to the voting strength of each municipal township."

It is true that the list of jurors prepared by the commissioners does not show the election precinct in which each of the jurors resided. It does show the post office address and often the street address. This, we think, substantially complies with the intention of the Legislature when it says that the election precinct of each juror shall be given. This provision of the statute was evidently for the purpose of locating the jurors and enabling interested parties to investigate the qualifications of such jurors. Certainly the giving of the address, as was done here, would answer this purpose. Section 808, Okla. Stats. 1931, Okla. Stats. Ann., vol. 38, p. 676, § 13, provides in part:

"A substantial compliance with the provisions of this chapter shall be sufficient to prevent the setting aside of any verdict rendered by a jury chosen hereunder, unless the irregularity in drawing, and summoning or empaneling the same, resulted in depriving a party litigant of some substantial right."

It not being shown that defendant was deprived of any substantial right, or was deprived of a fair trial, through the failure of the jury list to set forth the voting precinct, we see no error of the court in overruling the motion to suppress the jury panel.

The second contention of defendant is that the verdict is not sustained by sufficient evidence and is contrary to law. This question, to our mind, presents a very serious one, and demands a review of the evidence offered in this case. The statement of facts as given in defendant's brief is not disputed by the state. We have carefully read and reread this statement and the evidence offered. The only witnesses presented by the state on direct examination were the prosecutrix, Mabel Matherly, Dr. Humphrey, and Dr. Adams. The defendant testified in his own behalf, and introduced many witnesses who testified to his good character and reputation in the community where he lived and had lived for many years, at the time of the commission of the crime charged. He also introduced other witnesses who contradicted certain statements made by prosecutrix. On rebuttal the state introduced several witnesses who testified that the reputation of defendant was bad. Two of these witnesses had had trouble with the defendant and were unfriendly toward him, and the other did not give much reason for his testimony. Much of the testimony of the defendant and prosecutrix was the same. By this testimony it is revealed that the defendant in 1913 or 1914 married one

Bertha Ingalls. That about a year thereafter, the prosecutrix, Mabel Matherly, was born. That about a year thereafter defendant and his wife separated and he procured a divorce. The record does not disclose which of the parties was given custody of the prosecutrix, but it is shown that afterwards the defendant had custody of her, first keeping her with the parents of his former wife, and with other persons, one being his brother and wife. When prosecutrix was about three years of age, defendant entered the army during the World War. At this time defendant placed his child with his father and mother, who lived in the small town of Olive in Creek county. That after defendant entered the army his former wife and mother of the child obtained possession of her for the purpose of drawing compensation during the time of his service in the war. That when the prosecutrix was 11 years of age she was returned to defendant by his former wife. The defendant having married the second time, she was taken to the home of defendant and his second wife. During her 11th year prosecutrix wrote a very insulting letter about her father to her mother and in which language was used very unbecoming a girl of her age. She lived with her father and stepmother in their home near Olive, and attended the public schools of that community until she was about 21 years of age, graduating from the high school there. During all of this time she was given a good home by her father and stepmother, was well dressed, and given every opportunity that a community of that size offered. Prosecutrix testified that during this time her father was very strict on her, and that she was not permitted to keep company with any boys in the community. The defendant, while admitting he was strict as to the class of boys whom he permitted to accompany her, denied these charges, and

several boys testified as to being in her company and taking her places on different occasions, and of knowing other boys who did the same. The evidence further disclosed that defendant had many kinspeople living in this community during the time that these charges were made. He had three brothers and sisters, and his father and mother.

The information against the defendant was filed on the 11th day of March, 1935; the date alleged in the information as to the commission of the offense charged was December 29, 1933. He was tried on the 18th day of March, 1936. The prosecutrix at the time of the trial was 21 years of age. She testified that for six years prior to the commencement of this action defendant had numerous acts of sexual intercourse with her, beginning at the time she was 14 years of age and continuing until she was 20 years of age, and that all of such acts were by the use of fear and force upon the part of the defendant. That as a result of these acts she had a child prematurely born in 1931, at which time she was waited on by Dr. Thompson at her home. That in 1934 she had a second child born in a hospital at Cushing, where she was waited upon by Dr. Adams, and it was this act upon which the complaint and information was based in this action. She testified that she had never told anyone of these acts of intercourse until after defendant had been placed in jail on the charges filed against him in this case. She testified that she had not told her stepmother, but that her stepmother knew all about it and gave this as a reason for her stepmother leaving the defendant's home and going to her home in Arkansas. The evidence in this connection shows that the stepmother on one occasion was away two months in the state of Arkansas, at which time she returned and lived with defendant and prose-

cutrix over a period of years and then left again and at the time of this trial was living at Norfleet, Ark. She was not called as a witness and did not testify in this case. The testimony of prosecutrix further revealed that at the time of the birth of the child at the Cushing hospital she told Dr. Adams the name of the party who was the father of her child, and it was a person other than her father, and she also told the county judge of Payne county the same story. Her explanation of this at the time of the trial was that she was afraid to tell the truth for fear of injury by her father.

The prosecutrix testified that these acts of intercourse started when she was 14 years of age and many of them were committed, including the first time, in a room adjoining that occupied by her stepmother, and she testified to many times when she claimed her stepmother was present in the house. At one time she testified as follows:

"Q. Did you ever tell anybody? A. No, sir, I never did come right out and tell my stepmother, but I told her enough that she knew. I told him I could send him to the pen for life and he would double up his fist and knock me down. Q. When did he do that? A. One time when I got ready to leave. Q. In whose presence? A. My stepmother's; he doubled up his fist and knocked me down and my stepmother got in between us. Q. Did you ever tell anybody about it? A. I told people he was mean to me, but I didn't tell what he was doing because I was afraid to tell."

She testified that she did not tell the officers about it the first night after her father was arrested, but the second night, when they took her to Drumright she told it. She gave as a reason that her father was mean to her; that she was afraid of him; and that everybody in

Olive knew she was afraid of him. In another part of her testimony she said:

"A. I was afraid of him. Q. Why? A. Because he was mean to me. Q. Didn't he always furnish you with as good clothes as anybody in the community? A. Oh, yes, sure. Q. Didn't he always provide for you as much as any girl in that community? A. Yes, sir. Q. Sent you to school? A. Yes, sir. Q. Four years of high school? A. Yes, sir. Q. Gave you plenty to eat? A. Yes, sir. Q. And as nice a home as anybody has over there? A. Yes, sir. Q. And provided well for you? A. Yes, sir. Q. Then in what way was he mean to you? A. Simply because he was. When I was 11 years old I couldn't walk through the room but what he would make some remark and when I was 12 he said, 'She is the hottest assed thing I ever saw to be 12 years old'; and Mattie called him down."

Also:

"Q. And you didn't tell any of your aunts and uncles? A. No, sir. Q. Nor your grandfather or grandmother? A. No, but they all knew it. Q. How did they know it? A. Well, because my stepmother knew it. She knew it in her own mind but she couldn't prove it, and she told the folks about it. Q. You know she told all the folks about it? A. Yes, sir. Q. And nothing was done about it? A. No, sir. Q. And nothing was ever said about it? A. No, sir, my stepmother tried to get Uncle Harvey to talk to daddy and try to get him to do different but he wouldn't do it. Q. I believe you stated to the county attorney that you hated your daddy from the time you were about 11 years old? A. No, I never did until he started cowing me to death. Q. What age were you? A. Between 11 and 12."

Dr. Adams, testifying for the state, said that on October 5, 1934, he delivered prosecutrix of a child; that at that time she gave him the name of one other than

defendant as the father of the child; that defendant brought her to the hospital and that his wife prepared clothing for the child, as none was brought; that he and his wife adopted this child.

Dr. Humphrey testified that in April, 1932, he attended a young lady at the Matherly home; that he did not know whether it was prosecutrix or not; that it was a premature delivery; and that he was not told who the father of the child was.

We have given a rather full statement of the testimony offered by the state in this case. The evidence of the daughter is denied by defendant. Under the law, if the acts related by the prosecutrix were committed by force and fear, as she testified, it would not be necessary for her to be corroborated, or if she was under the age of consent at the time, our court has held that it would not be necessary for her testimony to be corroborated. See Carr v. State, 22 Okla. Cr. 371, 211 Pac. 423. But if she consented to the act she would then be an accomplice and under the statutes of this state it was necessary for her testimony to be corroborated. The question as to whether she was an accomplice is a question of law to be determined by the court. The question of the sufficiency of the corroboration is a question of fact for the jury. See Pruett v. State, 35 Okla. Cr. 359, 250 Pac. 1029.

The act relied upon in the allegation of the information was alleged to have been committed on the 29th day of December, 1934. At this time the prosecutrix would have been 20 years of age. It is inconceivable to us that these acts could have been committed by the defendant over a period of six years, sometimes every day or night in the week as testified to by prosecutrix, and while the

wife of defendant was in an adjoining room, and this by the use of force and fear. The fact that the wife of defendant and the stepmother of prosecutrix lived with defendant under such conditions as these is inconceivable; yet, according to the testimony of the prosecutrix, she did this very thing covering a period of six years. It seems to us that under the testimony the court would have been justified in finding as a matter of law that if the defendant had committed the acts complained of by the prosecutrix it was accomplished with her consent, and this being true she would be an accomplice, and it would be necessary under the statutes of this state that her testimony should have been corroborated. As before noted, the prosecutrix testified to many acts when the stepmother was present; she also testified that the stepmother was now living in Norfleet, Ark. It might have been that she was not produced as a witness upon the theory that she could not testify against her husband, but prosecutrix also testified that many people in and around Olive knew all about this; yet no witness was placed upon the stand from this community who in any way corroborated the story told by the prosecutrix. See Cargill v. State, 25 Okla. Cr. 314, 220 Pac. 64; Lacey v. State, 27 Okla. Cr. 42, 224 Pac. 994. In a case of this nature, even though the evidence was not admissible the state might have seen fit not to object thereto. In many cases the evidence has been admitted without objection. She went for six years, from the time she was 14 years of age until the time she was a grown young lady 20 years of age, attending the public schools of this community, graduating from the high school, and according to her own testimony, told no one of the outrage that was being perpetrated upon her by her own father almost daily during this time, and further that this was being

accomplished by force and fear. She never even mentioned this to her own people, many of whom lived in close proximity to where she lived. She did not mention it to any of her teachers. Certainly if her story was true some witness or witnesses could be produced by the state to corroborate her testimony.

The evidence revealed that the defendant endeavored to secure a place in the home of Mr. Lucas, superintendent of schools at Olive, and Mr. Holcomb, a prominent farmer in that community, for his daughter to reside. These propositions were considered very favorably by these parties and would have been accepted but for minor difficulties aside from this case. This was at the very time she testifies that these different outrages were being perpetrated against her by her father. It is passingly strange that he would attempt to place her in the homes of these good people if he was guilty of having the relations with her in the manner she testified.

We fully realize that a jury passed upon these facts, and we also note, and the wisdom of the ages has revealed, the great prejudice which exists against one charged with the crime of which this defendant stood charged. If he was guilty he deserves the extreme punishment; but this guilt should be established by evidence which leaves no doubt in the mind of the court and jury as to its truthfulness. The record in this case cannot be read with its contradictory statements by the prosecutrix, its unreasonableness, its lack of corroboration, and especially the fact that witnesses were not placed upon the stand whom the prosecutrix herself stated knew about many facts which, if true, would have corroborated her testimony. This court, in two recent cases, has decided questions similar to the one here involved. The case of

Williams v. State, 61 Okla. Cr. 396, 68 Pac. 2d 530,531, and Self v. State, 62 Okla. Cr. 208, 70 Pac. 2d 1083, 1093. Many authorities are cited in these cases sustaining the views here taken. In the Self Case, the court says:

"The charge of illicit sexual relations is easily made, and often inspired by malice, hidden motives, or revenge, and evidence to establish the same may be easily fabricated and hard to disprove. As has been well stated by an able jurist: 'There is no class of prosecution attended with so much danger, or which affords so ample an opportunity for the free play of malice and private vengeance. In such cases the accused is almost defenseless.'

"In our opinion no person charged with crime should be convicted on such improbable, inconsistent, and unreasonable testimony as that given by the prosecutrix in this case."

See Morris v. State, 9 Okla. Cr. 241, 131 Pac. 731; Ferbrache v. State, 21 Okla. Cr. 256, 206 Pac. 617; Witt v. State, 29 Okla. Cr. 357, 233 Pac. 788; Palmer v. State, 7 Okla. Cr. 557, 124 Pac. 928.

This court, after carefully reviewing this record and the proceedings of this trial, has come to the unanimous conclusion that it would be unjust for this defendant to serve a term in the penitentiary, for a period of ten years upon the testimony offered in this case. It is better that the case be reversed and that an opportunity be given to see if the testimony of the prosecutrix may be corroborated if the state deems it advisable to retry it. If not, it should be dismissed.

We deem it advisable to refer to the instructions given by the court because the giving of certain of these instructions, in our opinion, was erroneous. The record discloses that defendant did not except to the giving of

the instructions and for the first time in his motion for new trial stated that the court erred in giving instructions Nos. 1 to 14, inclusive. This court has held many times that where the defendant has failed to take his exceptions to the instructions of the court, the same will not be considered only to see if fundamental error has been committed by the court in the giving of the instructions. We call attention to the instructions which we think were error. In instruction No. 4, the court instructed the jury as follows:

"You are instructed that it is not necessary for the state to prove the exact time of the commission of the alleged crime and that proof of its commission at any time within three years next prior to the filing of the information herein, to wit, on the 11th day of March, 1935, is sufficient as to time."

By this charge the court instructs the jury that proof at any time within three years next prior to the filing of the information is sufficient as to the time. It is true prior acts in cases of this character are competent for the purpose of showing familiarity between the parties and for the purpose of corroborating the offense charged where the prosecutrix was not an accomplice, but where the prosecutrix is an accomplice as shown by the facts in this case, the jury should have been limited to find whether the act was committed on the date alleged in the information. The defendant was specifically charged on that date. This distinction is clearly shown in the case of Ealum v. State, 32 Okla. Cr. 197, 239 Pac. 933, 934. The court, after referring to the cases cited in defendant's brief, says:

"The Coss Case, supra [53 Ore. 462, 101 Pac. 193], is a case wherein rape is charged, and several acts appear in the testimony. The Moss Case, supra [73 Wash.

430, 131 Pac. 1132], is a charge of adultery, and four separate and distinct acts appear in the evidence. The Clark Case [27 Idaho, 48, 146 Pac. 1107], supra, is an incest case, and more than one act appears in the evidence. The Williams Case [133 Cal. 165, 65 Pac. 323], supra, is an adultery case, and numerous acts appear in the evidence.

"In all these cases it was proper to offer evidence of other acts, as it would be under our practice, in order to show the relation, inclination, and intent of the parties. But to warrant a conviction it would be necessary to rely upon one specific act, and it would be further necessary that the jury be limited to one act." State v. Clark, 27 Idaho 48, 146 Pac. 1107; State v. Coss, 53 Ore. 462, 101 Pac. 193; State v. King, 50 Wash. 312, 97 Pac. 247, 16 Ann. Cas. 322.

In People v. Williams, 133 Cal. 165, 65 Pac. 323, 324, the court says:

"The trouble arises from the fact that upon a charge of crime involving sexual intercourse by consent other like offenses may be shown to prove that the parties are lewdly inclined, and that the barriers of modesty have been broken down with reference to each other; not primarily to prove habitual or continuous criminality or other offenses. In this case, as well as in any other, the prosecution must charge a specific offense; and the conviction, if one is had, must depend upon the proof of that offense alone."

In the case of Walker v. State, 12 Okla. Cr. 179, 153 Pac. 209, 213, this court says:

"While the announcement of the court may be a correct general statement of law as applied to a variance between the time fixed in an indictment and that proven upon a trial, it was not a fair and explicit statement of the rule as it should have been applied to the facts in evidence in this case. The only testimony tending to show the time of the commission of the offense was that

of the witness Brady, who stated that 'it was either in September or October of the year 1911.' The defendant was entitled to know the particular offense that he was called upon to defend against and to know approximately the time when it was committed, and we think that under the peculiar circumstances of this case the uncalled for announcement of the court was prejudicial to the substantial rights of the defendant."

The prosecutrix testified to many acts of intercourse and on many different dates, some of them prior to the time she had reached the age of consent, others after she had reached that age; the specific act alleged in the information being after she had reached the age of consent. Under the above instruction, the jury could have found the defendant guilty although they did not believe him guilty at the time alleged in the information. If they believed him guilty prior to her arriving at the age of consent, the law is that she would not have to be corroborated. If they believed him guilty after she had arrived at the age of consent and that the act was committed voluntarily upon her part, then it would be necessary for her to be corroborated. One juror could have believed defendant guilty on one date and another juror believed him guilty on another date. It will thus be seen that this charge did not distinguish as to the questions involved here, and we are of the opinion that the same was fundamental error.

In instruction No. 7, the court instructed the jury that a person charged with the commission of a crime cannot be convicted upon the uncorroborated testimony of an accomplice. The court then says:

"You are instructed that the question of whether or not the prosecuting witness, Mabel Matherly, was an accomplice to the alleged crime charged against the defendant is a question of fact for the jury to be determined

from all the evidence and all the facts and circumstances before you in this case.

"In this connection you are instructed that a female person cannot be an accomplice to the crime of incest unless she consents to the act and is in fact guilty of the crime herself; and, that in no event can a female person be deemed an accomplice to such crime where she was caused to submit by the use of force, fraud or undue influence on the part of the defendant."

It will thus be noted that the court by this instruction submits to the jury the question of fact as to whether the prosecutrix, Mabel Matherly, is an accomplice, and under the second paragraph quoted, tells the jury that a female person cannot be an accomplice to the crime of incest unless she consents to the act and in fact is guilty of the crime herself and cannot be deemed an accomplice where she submits to the act through force, fraud, or undue influence on the part of the defendant. This may be a true statement of the law, but as pointed out in referring to instruction No. 4, it would be impossible for the jury to distinguish between the two instructions, for a different rule applies if the jury relied upon conviction at a time before she reached the age of consent or after she had reached that age. Under the holdings of this court, the question of whether or not the prosecutrix, Mabel Matherly, was an accomplice was a question of law to be determined by the court. See Pruett v. State, supra; Yeargain v. State, 57 Okla. Cr. 136, 45 Pac. 2d 1113; Cudjoe v. State, 12 Okla. Cr. 246, 154 Pac. 500, L.R.A. 1916F, 125. This rule is well defined in the case of State v. Clark, 27 Idaho, 48, 146 Pac. 1107, 1115, where the court says:

"The evidence shows that intercourse could not have occurred without the consent of the prosecutrix. She was therefore an accomplice if the crime were committed.

Mercer v. State, 17 Tex. App. [452], 465. According to the prosecutrix's own testimony, this incestuous intercourse continued from the time she was about 11 years of age until she was about 22 years of age; that it was repeated once or twice a week during a period of about 11 years, and in the very presence of other members of the family, always in the very room where her own mother or brothers or sisters were sleeping. That this should have continued that period of time without the consent of the prosecutrix is to the ordinary mind unnatural, unreasonable, and incredible. We cannot believe it possible that those acts could have occurred as testified to by the prosecutrix without her consent. The irresistible conclusion from all of the evidence is that she was an accomplice in the performance of the act, if it occurred, for which this defendant was convicted. As bearing upon this question, see Pate v. State (Tex. Cr. App.) 93 S.W. 556.

"Under the facts of this case, the court ought to have instructed the jury that according to the testimony of the prosecutrix she was an accomplice. We think the correct rule is laid down in that regard in the case of Clifton v. State, 46 Tex. Cr. R. 18, 79 S.W. 824, 108 Am. St. Rep. 983, a case similar in some respects to the one at bar. The illegal acts alleged there covered a period of some six or eight years, and the prosecutrix denied that she engaged in the sexual intercourse with the same purpose and intent as the defendant, that she was neither desirous nor willing to do it, that she did so because she was under defendant's influence, and whatever he did she thought would be right, and the court there charged the jury similarly to the charge above quoted, and the court said:

" 'Now, the jury evidently understood from the charge that, unless she engaged in the intercourse with the same desire as did the appellant, she would not be an accomplice. This is not the true criterion under the facts of this case. If she submitted to his embraces, as she says, at intervals for a considerable period of time and kept silent, she would nevertheless be an accomplice, although

she did not willingly enter into it with the same desire as did appellant.'

"And the court held that said charge was error.

"So, under the facts of this case, the court ought to have instructed the jury that the prosecutrix, according to her own testimony, was an accomplice, and that they could not find the defendant guilty upon the uncorroborated testimony of the prosecutrix. In other words, her testimony in regard to the illegal act must be corroborated."

See Gillespie v. State, 49 Tex. Cr. App. 530, 93 S.W. 556; Tate v. State (Tex. Cr. App.) 77 S.W. 793.

We believe that under the facts in this case the court should have determined, as a matter of law, the question as to whether or not the evidence showed that prosecutrix had voluntarily committed the act and should have told the jury that under such testimony she was an accomplice and it was necessary for her testimony to be corroborated. We have read some cases in which the court holds that this question may be submitted to the jury as a question of fact, but under the holding of the Pruett Case, supra, we think the court should have determined this question as a matter of law.

In reversing this case the court has taken into consideration the above instructions and has come to the conclusion that justice demands that a new trial be given in this case.

For the reasons hereinbefore stated the judgment of the district court of Creek county is reversed.

DAVENPORT, P. J., and DOYLE, J., concur.