O. E. STEVE HAMILTON v. STATE.

No. 10320.    Oct. 4, 1944.

(152 P. 2d 291.)

Brown & Cund and Jerome Sullivan, all of Duncan, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen and J. Walker Field, Asst. Attys. Gen., for defendant in error.

JONES, P. J.  The defendant, O. E. "Steve" Hamilton, was convicted of the crime of stealing a horse and sentenced to serve a term of four years in the State Penitentiary.

The sufficiency of the evidence to sustain the conviction is challenged.

W. H. Gray testified that he lived a mile and a half east of Duncan; that he missed an iron-gray mare, coming four years old, weighing about 1,300 pounds, shortly before Christmas of 1941; that he later found the mare about the middle of February, 1942, near Chickasha; that the mare was worth between $90 and $100, and was taken without his knowledge or consent. The fence was washed out in his pasture in October of 1941. The last time he saw his mare she had gone into the adjoining pasture of Sid Jones, which was about December 16 or 18, 1941.

W. T. Prince (or Price) testified that he was engaged in the trucking business in Duncan; that on the Friday before Christmas, 1941, the defendant hired him to haul a mare for him. Defendant said this mare was three miles south of Duncan, and witness agreed to haul her to town for $5. That when he and defendant got to the place where the mare was supposed to be tied, she was gone; that defendant found the mare south of where she had been tied and they loaded her into the truck and wit-

ness hauled her to Duncan, arriving there about dark. The mare was described as iron-gray, heavy-set with a roached mane. That on the following Monday, defendant came to him and hired him to haul the mare to Chickasha; that he took the mare on that date to the sales barn at Chickasha, unloaded her, and returned to Duncan. That, later, in a conversation with defendant in Duncan, defendant told him he sold the mare for $75, and paid the witness $5 for taking the mare to Chickasha.

J. W. Surber testified that he ran the Farmer's Auction Sale, at Chickasha; that they had a sale on Monday, December 22, 1941; he identified a check for $73, representing sale of an iron-gray mare, Number 197, payable to Otis Hammons. He, also, identified exhibits "B" and "C"; "B" being the invoice for the iron-gray mare which was the ticket kept by the auctioneer showing the amount of the sale, which in this instance was $75. Exhibit "C" was the check-in slip made at the time the animal was checked in at the sales' barn, which gave the name of the person who checked in the mare as Otis Hammons, and his address as Chickasha, Oklahoma, General Delivery. It showed that the animal had brought the sum of $75, less $2 as commission on the sale. The animal was sold to a Mr. Daniels.

Roy Daniels testified that he lived near Pocasset; that on December 22, 1941, he bought an iron-gray, roached mare, coming four years old, at the Farmer's Auction Sale, at Chickasha, for $75; that he later sold her to Mr. Swindell, at Amber.

H. E. Swindell testified that he bought a four year old iron-gray mare with a roached mane from Mr. Daniels; that, later, Mr. Gray and a deputy sheriff from Duncan,

came to his place and identified the mare as belonging to Mr. Gray, and she was delivered back to him.

Finis Martin, undersheriff, testified that he arrested the defendant and immediately had a conversation with him in which defendant said that the iron-gray mare which sold at the Farmer's Auction Sale had been raised by him and he could prove it by his mother; that, later, defendant changed his story and said he bought the mare from Carl Maloney for $57. This was all the evidence in chief for the state.

Mr. and Mrs. Virgil Braggs each testified that they lived on a farm three miles south and one and one-half miles west of Duncan; that they knew Carl Maloney; that on or about December 16, 1941, Carl Maloney brought an iron-gray mare and put it in the Jones pasture adjoining theirs. That Carl Maloney came later and got the mare on Friday, about two weeks after the mare had been brought there. That the defendant Hamilton was with him, and Maloney asked her for a rope or a bridle or something with which he could lead the mare. That they took the mare away at that time. That it was on Friday before Christmas; these parties were positive about the description of the mare because it broke into their pasture during a large part of the time when it was supposedly in the Jones' pasture.

O. E. Hamilton testified that the first time he saw the mare herein involved was on Friday, the week before Christmas. That Carl Maloney saw him on that date in a recreation parlor in Duncan, and told him he had a mare to sell; that he drove three miles south and one and one-half west of Duncan, and saw the mare at Braggs' house. That he bought her for $60 and hired Bill Price to bring her to town. That, later, he hired Price to haul her to

Chickasha, where she was sold through the auction sale, for $75. That he did not give his name as Otis Hammons, but told them his name was Otis Hamilton. He admitted endorsing the check as Otis Hammons, but said he called attention of the man at the bank to the discrepancy when it was cashed. He, also, admitted telling the undersheriff that he had raised the mare, but explained that he said that because he did not think it was any of the undersheriff's business where he had gotten the mare.

Carl Maloney testified in rebuttal for the state that he had previously been convicted of burglary and had pleaded guilty to three different cases of cow stealing and received a total of seven years therefor, during the present term of court. That he helped load the iron-gray mare which was transported by Mr. Price, in his truck from Duncan to Chickasha, for the defendant Hamilton, on Monday December 22, 1941. That three or four weeks prior to that time, he had been employed by Sid Jones to help move some cattle from a pasture of Jones, located south and west of Duncan, to the town of Duncan. That on the date the cattle were moved, Jones had him take a gray mare from his place east of Duncan, to the place southwest of Duncan, to be used in rounding up the cattle. He described the mare, which he moved for Jones at that time, as being a light gray mare, eight or nine years old, weighing about a 1,000 pounds, and specifically said that the mare which he took to the Jones' pasture southwest of Duncan was not the mare which was hauled by Price to Chickasha, on December 22, 1941, for the defendant Hamilton. He denied ever selling the mare in controversy to the defendant and disclaimed any interest in her at any time. Other witnesses testified in rebuttal for the state substantiating the story related by Maloney, concerning the removal of Jones' cattle about the first of December,

from Jones' place southwest of Duncan into the city of Duncan.

It is argued by the defendant in support of his contention that the evidence is insufficient to support the conviction that, if he is guilty of anything, he is only guilty of receiving stolen property which had previously been stolen by Maloney. However, this argument of defendant is based solely upon the evidence of the defendant. The evidence of the state makes out a clear case of guilt. According to Price's testimony, Maloney was not present when he first hauled the stolen mare from south of Duncan into Duncan, for the defendant. Not only did the state show the defendant's possession and asportation of the stolen animal, but the fact that he gave a fictitious name with an incorrect address at the sales barn and further told conflicting stories to the officers at the time of his arrest concerning the animal all show a guilty knowledge and are inconsistent with innocence.

It is next contended that the court erred in refusing to discharge certain jurors who were challenged in a motion addressed to the court after the jury panel had been sworn to try the cause.

The voir dire examination of the jury is not included in the record. However, after the jury had been impaneled and sworn to try the cause, the following proceedings were had according to the record:

"By Mr. Brown: Comes now said defendant and moves the court to discharge this jury, for the reason that the answers of the following jurors, to-wit: W. H. Pinson, W. R. Frederick, N. T. Holmes, J. W. Owenby, C. T. Meeks, and Robert Sutton, show that they were on the jury that tried Marion Taylor, yesterday and that the evidence of the said Marion Taylor, was that he got the cow which he was accused of stealing in that case at the home of this

defendant in Duncan, Oklahoma. By Mr. Marmaduke: It is stipulated and agreed by and between the state and defendant, that each of the above named jurors have testified under oath on their voir dire examination, both by the state and by the defendant, that nothing they heard in the Taylor case, and no evidence given by Taylor or any other party, wherein the name of O. E. Hamilton was mentioned would in any way affect their verdict one way or the other in this case and that their minds were free and clear at this time as to the guilt or innocence of the defendant, Hamilton, in this case. By the Court: That can be handled alright, overruled. Mr. Brown: Exceptions to the ruling of the court. Mr. Marmaduke: It is stipulated and agreed by and between the State and defendant that in the case that was tried yesterday, State of Oklahoma v. Marion Taylor, that the defendant in that case, Marion Taylor, testified in telling the jury about his recent possession of stolen property, which was in question in that case that he got possession of the stolen property from O. E. Hamilton; that each of the above named jurors whose names are contained in defendant's motion to discharge the jury, each of them were asked that particular question on their voir dire examination as to whether or not that particular testimony in that case, which came out in that trial, would in any way affect their verdict in this case against the defendant, Hamilton; that each of said jurors answered that it would have no effect upon the trial of this case and their minds were free and clear of any opinion as to the guilt or innocence of this defendant on this charge and they knew of no reason that would in any way prevent them from trying this defendant in this case according to the law and evidence and had at this time no opinion as to the guilt or innocence of the defendant on trial at this time; that nothing that occurred in this former trial and no testimony given by any party in the former trial would affect them or keep them from giving this defendant a fair and impartial trial in the case on trial and from rendering a fair and impartial verdict in the case."

The record is silent as to whether any of these jurors were challenged for cause, and it is, also, silent as to whether the defendant exercised any of his peremptory challenges.

22 O. S. 1941, § 653, provides:

"When challenge taken.—It must be taken when the jury is full, and as soon as one person is removed by challenge, another must be put in his place, until the challenges are exhausted or waived. The court for good cause shown may permit a juror to be challenged after he is sworn to try the cause, but not after the testimony has been partially heard."

Counsel for the state, in resisting this contention of defendant, states that the motion of the defendant was properly overruled because it was presented after the jury had been sworn to try the cause. However, the above statute sufficiently answers that contention. For good and sufficient cause, the court, if no testimony has been presented, may excuse a juror after he is sworn if the cause for such challenge is deemed sufficient to the court. It is evident that counsel for defendant, after thoroughly examining these jurors on their voir dire, was satisfied that they would act fairly and impartially in accordance with the law and the evidence, and it was only after the jury was sworn to try the cause that he deemed the matter of sufficient importance to make a further challenge to the panel as a whole and have a record made of the proceedings. Counsel for defendant have cited no authorities to sustain this proposition.

This court has held that where certain jurors impaneled in the trial of a defendant were the same jurors as sat in the previous trial of the same defendant on a similar charge, and the controverted issues of fact are the same as in the case previously tried, that such jurors

are not impartial within the meaning of the Constitution. Schrimpsher v. State, 32 Okla. Cr. 371, 241 P. 201; Moffitt v. State, 45 Okla. Cr. 440, 283 P. 1027.

However, in the case of Bills v. State, 48 Okla. Cr. 233, 290 P. 935, this court held:

"Jurors, who sat in the trial of a criminal case wherein certain witnesses testified, are not thereby disqualified to sit as jurors in the trial of another case against a different defendant, tried at the same term of court, where such witnesses will testify for the state in reference to a different offense and at a different time."

The Taylor Case referred to in the stipulation of counsel did not have anything to do with the instant case and no mention of it was made by any witness. By reason of the fact that counsel for defendant did not challenge any of said jurors for cause and did not choose to excuse any of them by means of one of his five peremptory challenges, the court evidently thought that counsel was not diligent in presenting his challenge to the panel after they were sworn. No additional evidence of their disqualification was presented, other than that brought out by their statements on voir dire, and, since counsel passed the jury for cause and accepted them without exercising any of his peremptory challenges, the trial court was justified in the exercise of his discretion in concluding that no good cause was shown to require him to excuse the panel after they had been sworn to try the cause.

Furthermore, it would appear that the statute above quoted was meant to apply only to individual jurors who were disqualified, but whose disqualification was not brought out on the voir dire examination, but only became known after the jury had been sworn to try the cause. Orderly procedure and a requirement of due diligence

on the part of counsel demands that counsel inquire into all matters within his knowledge which might affect the qualification of the jurors on their voir dire examination, and, where this is not done, the trial court may at his discretion refuse to consider a challenge to an individual juror after the jury is sworn to try the cause. The right to challenge a juror for cause in such an instance is considered to have been waived.

It is further contended that the county attorney was guilty of prejudicial misconduct in his closing argument to the jury. The entire argument of the county attorney is incorporated in the record. That part of the argument complained of is that statement of the county attorney,

"This case, gentlemen, has been rather amusing to me. I am referring to the case against Marion Taylor, the case against Carl Maloney and the case against Hamilton. When we tried the Taylor case, he laid it off on Carl Maloney. . . . Mr. Brown: We object to that line of argument. Mr. Marmaduke: It came out in the evidence. Court: The jury should disregard any statement made that is not based on the evidence or reasonable deductions therefrom. When we tried the Taylor Case he laid it off on this defendant. When we tried this defendant he laid it off on a boy up in jail, towit: Carl Maloney. I say it's been amusing to me, each and every time we find the defendant we are trying in possession of the stolen property. Mr. Brown: Give us an exception to that."

It is so well settled by many decisions of this court that citation of authorities is unnecessary that counsel for the state in his argument to the jury must confine himself to the evidence and reasonable deductions that may be drawn therefrom.

Counsel for the state was proceeding on the theory that the questions asked the jurors on voir dire examina-

tion concerning the Marion Taylor case were evidence in the trial of this defendant and a matter about which he could legitimately argue. However, this was an incorrect assumption on the part of the county attorney. Although some of the jurors had sat in the Taylor Case, still there was no evidence in the instant case concerning the Taylor Case, and the argument accordingly was improper. This court has been liberal in allowing counsel for the state to have a wide range of discussion and illustration in his argument, but where the prosecutor makes a statement outside of the record for the purpose of securing a conviction, the strength of the evidence against the defendant will be considered, and, if the improper argument may have been a factor in determining the verdict, a new trial will be granted; or, if an excessive punishment seems to have been given by reason of such argument, a modification of the sentence will be made.

In this case, the evidence against the defendant clearly shows his guilt. The argument of the county attorney complained of is the only instance in his argument where the county attorney in any way was guilty of going outside of the record. We do not feel that this court can place the stamp of approval upon that part of the argument complained of in this case. However, because the guilt of the defendant is definitely established, we are unwilling to reverse the case for a new trial, but, instead, feel that the punishment assessed against the defendant should be reduced to the minimum sentence of three years' imprisonment in the State Penitentiary.

It is, therefore, ordered that the judgment and sentence of the district court of Stephens county is modified by reducing the punishment assessed against the defendant from four years in the State Penitentiary to a term of

three years in the State Penitentiary.   The judgment and sentence as thus modified is affirmed.

BAREFOOT, J., concurs.   DOYLE, J., not participating.