Troy Samuel LOOPER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13354.

Court of Criminal Appeals of Oklahoma.

May 22, 1963.

Harold B. Dane, Stigler, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

JOHNSON, Judge.

The plaintiff in error, Troy Samuel Looper, who will hereinafter be referred to as defendant, was charged in the district court of Haskell County with the crime of incest. He was tried before a jury, who found him guilty and assessed his punishment at ten years in the penitentiary, and the case is now here on appeal.

For reversal defendant sets out three specifications of error, which will be discussed in the order given.

The first contention is that the verdict is contrary to law and the evidence. This necessitates a statement of the facts, shocking and revolting as they are.

On May 4, 1962 the county attorney of Haskell County filed an information in the district court, charging the defendant with having committed the crime of incest in and upon one Rosie Lee Looper, the daughter of the defendant, "by having sexual intercourse with her over a period of some seven years, beginning the 1st day of May, 1955 and has continued frequently since that time, the last act of sexual intercourse was committed on the 16th day of April, 1962, and that the said Rosie Lee Looper has had born to her three children during this period of time, and that the said Troy Samuel Looper is the father of all said children", etc.

A demurrer was filed to this information on July 18, 1962, which was sustained on July 20, and an amended information filed the same day, charging the defendant with having committed the crime of incest on April 16, 1962 by means of putting the said Rosie Lee Looper in fear, etc.

The case proceeded to trial on October 31, 1962 before a jury, and they returned a verdict of guilty, fixing the penalty at ten years in the state penitentiary. Motion for new trial was filed and overruled; judgment and sentence entered on November 21, 1962, and appeal has been perfected to this Court.

The State produced three witnesses, Rosie Lee Looper, the prosecutrix, Bertha Looper, her mother, and her brother Thomas Dean Looper, age 20 years.

The defendant testified and offered eleven witnesses: a daughter, two brothers, a sister-in-law, a half sister and a niece, and some character witnesses.

The prosecutrix testified that she was 22 years of age on the date of the trial, and that she had married on October 18, 1962. She stated that this course of conduct on the part of her father started when she was very small, "I would judge very near 12, and I had rheumatic fever. I was 12 when I had it." She testified that she had three little boys, the oldest one 7 years of age, and that she had given birth to a little girl, who died when two days old. She stated that the defendant was the father of all four of the children.

Rosie Lee testified that her father made her go to the Welfare Department to seek aid for the support of the children, and told her to give the names of some boys in the neighborhood as the fathers of the children, and she admitted that she did this. She said that her father kept her with him practically all of the time and never permitted her to have dates, and that she had never had a date with a boy until after her father was placed in jail; that she had never gone out with any of the boys she had named as the fathers of her children. That when she went to the Welfare to ask for aid for the fourth child, she gave the name of the father as Troy Looper, and testified: "I told them the other part was a lie and he was the father of all of them." The woman in the Welfare office took her to the county attorney and complaint was made.

The mother testified that the defendant slept in the room with the prosecutrix and her three children; that there were two

beds in the room; that there was no lock or latch on the door to the room and when the defendant would go in the room to retire he would wire the door closed; that she could hear what was going on in the room. The mother was corroborated by the boy Thomas.

The defendant testified in his own behalf, and denied that he was the father of Rosie Lee's children, or that he had ever had intercourse with his daughter.

Counsel for defendant states: "The first question involved in this appeal pertains to a failure of the State's evidence to prove that a crime was committed as charged in the amended information. It was necessary that the state prove a specific violation on a specific date, as charged in the information, and this the evidence fails to show." Defendant cites no law in support of this contention.

In support of his contention that the verdict of the jury is contrary to the law and the evidence, defendant states that the prosecuting witness testified that she talked to the Welfare Department and the County Attorney on April 16, and signed the complaint on that date, returned to her home and had an act of intercourse with the defendant that night. She testified:

"Q You have alleged in your petition that on the 16th day of April, 1962, that Troy Samuel Looper had intercourse with you? A Yes, the night before Roland Smith come and got him the next morning. Q That is the way you remember the date? You came in my office the next day and signed the complaint? Did that happen, Rosie Lee? A I had done signed the complaint, and then before the law had time to come—before—I done had another intercourse with him."

Then on cross examination:

"Q You say that you talked to the county attorney and the Welfare Department about that and then you went home and on the night of the 16th, Monday night before he was arrested the next day, you had intercourse with him again? A Yes. Q What time of the day or night was that? A It was always in the after hours of the night when he thinks everybody is asleep. He lay there and cussed until one or two o'clock."

Rosie Lee's mother testified on cross examination:

"Q Now when it was obvious when he was going in the room, you say you would hear them in the room? A That's right. I have heard them in the room. The night before they picked him up and brought him up here and put him in jail, he cussed until midnight because she wouldn't."

We are inclined to agree with counsel for defendant that "it may be considered 'splitting hairs' to claim that if incest were committed by the defendant, that it was committed an hour or two after the time alleged in the information." Defendant contends that the State failed to prove a specific violation on a specific date, as charged in the information.

In Pruett v. State, 35 Okl.Cr. 359, 250 P. 1029 (an incest case) this Court said:

"It is well settled in this state that the general rule that proof of other offenses is inadmissible, unless a part of the res gestae, does not apply to offenses involving sexual intercourse; but evidence of other acts is admissible to show the relation and familiarity of the parties and tending to corroborate the testimony of the prosecutrix as to the particular act relied on for conviction."

Citing Morris v. State, 9 Okl.Cr. 241, 131 P. 731; Ellsworth v. State, 10 Okl.Cr. 452, 137 P. 1188, 1189; and Williams v. State, 14 Okl.Cr. 195, 169 P. 655.

In Wharton's Criminal Law & Evidence (13th ed.), vol. 5, p. 210, it is stated:

"When time is not of the essence of the offense charged, the time need not be proved as laid in the indictment or

information. For example, in prosecutions for the following crimes, it has been held that a variance between the time alleged and the time proved was not fatal for the reason that time was not of the essence of the crime: * * * incest, * * *."

█ This prosecuting witness had talked with the Welfare authorities, who took her to the county attorney on April 16, and she testified that after she returned home that night her father forced her to have intercourse with him; and later testified that it was one or two o'clock. We are of the opinion that this was not a material variance, and that time is not of the essence in a case of this character.

█ There is no contention that Rosie Lee was an accomplice, and that her testimony should be corroborated, and we are of the opinion that it was not necessary for her testimony to be corroborated (Fitzpatrick v. State, 87 Okl.Cr. 51, 194 P.2d 184. However, there was sufficient corroboration by her mother and brother Thomas. Defendant's brothers and sister-in-law testified that defendant would not permit Rosie Lee to have dates, and that he kept her with him most of the time.

█ Defendant under his second contention of error states that the court erred in overruling the motion for new trial on the grounds of newly discovered evidence, the defendant desiring to introduce the results of a polygraph test which he had voluntarily taken after the judgement and sentence was pronounced against him.

The results of such a test have been held by this Court inadmissible for any purpose, in view of the uncertainty of such tests in their present state of development. Henderson v. State, 94 Okl.Cr. 45, 230 P.2d 495, 23 A.L.R.2d 1292 (and annotation p. 1308); Id., 342 U.S. 898, 72 S.Ct. 234, 96 L.Ed. 673; Toms v. State, 95 Okl.Cr. 60, 239 P.2d 812; Hayes v. State, Okl.Cr., 292 P.2d 442.

In Henderson v. State, supra, a case in which the defendant had been convicted of rape and sentenced to death, this Court said:

"The results of lie detector tests were not admissible in evidence for the reason that no foundation was laid by showing that such tests had attained scientific and psychological accuracy, and general recognition, and its operators were capable of definite and certain interpretation."

In the annotation following this case in 23 A.L.R.2d, at page 1308, it is stated:

"It would appear, at least in the absence of stipulation, that the courts almost uniformly reject the results of lie detector tests when offered in evidence for the purpose of establishing the guilt or innocence of one accused of crime, whether the accused or the prosecution seeks its introduction. The reason most commonly assigned for the exclusion of such evidence is the contention that the lie detector has not yet attained scientific acceptance as a reliable and accurate means of ascertaining truth or deception."

A long list of cases follows this statement.

█ We agree with the statement of counsel for defendant, set forth in his second proposition, that there is no class of prosecution attendant with so much danger or which affords so ample an opportunity for free play of malice and private vengeance as was rape and incest. But even so, this Court is not warranted in invading the province of the jury to weigh the evidence unless the evidence of the prosecuting witness is inherently improbable, conflicting, inconsistent and contradictory.

█ No such situation confronts the court in the case at bar. The jury had the opportunity to hear the evidence of the witnesses and to observe their demeanor on the witness stand, and decided against the defendant. It has repeatedly been held that where the evidence is conflicting, and that offered by the State reasonably tends to sustain the judgment and sentence, this

Court will not substitute its judgment for that of the jury. Fitzpatrick v. State, supra, and numerous other cases.

The rule has often been announced that in the consideration of the sufficiency of the evidence in an incest case, the same rule will be followed as in an examination of the evidence in a rape case. Matherly v. State, 62 Okl.Cr. 418, 71 P.2d 1094; Fitzpatrick v. State, supra, and cases cited.

We find that the trial court did not err in overruling the motion for new trial.

Defendant's third contention is, "That the jury received evidence out of court, or heard prejudicial discussion of the case out of court, which influenced their verdict in this case."

Attached to the motion for new trial was an affidavit by the counsel for defendant, in which he states:

"This affiant further states that he, himself, as well as other persons, heard the deputy court clerk discussing this case in the presence of some of the prospective jurors and announcing her opinion that the defendant 'should be hung', or words to that effect."

 Counsel on voir dire examination should inquire into all matters within his knowledge which might affect the qualification of the jurors, and where this is not done, the right to challenge a juror or the jury panel, is considered to have been waived. Hamilton v. State, 79 Okl.Cr. 124, 152 P.2d 291.

 In the early case of Horton v. State, 10 Okl.Cr. 294, 136 P. 177, Judge Doyle, speaking for the Court said:

"A defendant cannot sit supinely by and allow disqualified and incompetent jurors to be selected to try him, and then take advantage of his own indifference or negligence, nor can a defendant call upon this court to presume that he asked a juror certain questions, in the absence of a showing in the record that such questions were asked. A known ground of disqualification of a juror before or during the progress of a trial is waived by withholding it or refusing, or declining to raise the objection until after verdict."

 This has been the holding of the Court since that decision, and we are of the opinion that defendant waived his right to complain, and would not be entitled to a reversal of the case on that ground, under our statute.

This Court does not mean that the Court will condone or sanction voluntary statements by officers of the court which are designed to inflame the jury or prejudice them against a defendant, and the deputy court clerk in this instance should certainly be severely reprimanded for her statement in the presence of the prospective jurors. But from the very fact that she was overheard by the attorney for defendant, and the jurors thereafter accepted, the complaint comes too late at this time.

We have read this record with care, and examined the court's instructions, to which no objection was made, to make sure that this defendant had a fair trial, and have reached the conclusion that no reversible error is shown.

The judgment and sentence is affirmed.

BUSSEY, P. J., and NIX, J., concur.