**James Carlock BABB, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17839.**

United States Court of Appeals
Eighth Circuit.

Oct. 27, 1965.

Kenneth Coffelt, Little Rock, Ark., for appellant.

James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., Robert D. Smith, Jr., U. S. Atty., Little Rock, Ark., for appellee.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

Defendant, James Carlock Babb, was tried to a jury, convicted and sentenced to a term of five years' imprisonment under a single count indictment charging him with receiving and concealing a stolen 1962 model Oldsmobile, which was moving in interstate commerce, knowing that said vehicle had been stolen.[1]

For reversal of his conviction, defendant argues in this appeal that (1) there is insufficient evidence to support the verdict; (2) the District Court's rulings on the admissibility of certain evidence were erroneous; and (3) the United States Attorney made prejudicial remarks which deprived him of a fair trial.

We have scrutinized these contentions and for the reasons hereinafter stated affirm the conviction.

*Sufficiency of Evidence.* The Oldsmobile was stolen without license plates from a dealer's lot in Kansas City, Missouri on the weekend of May 12, 1963— either late Saturday night or on Sunday—and was recovered from the possession of defendant at Alexander, Arkansas, a suburb of Little Rock, on June 15, 1963.

When apprehended by federal agents, Babb gave the name of Ted Barker and said he had obtained the car from Roger Bennett in Alabama.[2] Babb produced an Alabama registration certificate indicating that a John Baird owned the car. Also, a bill of sale, purportedly notarized by Carl Brown of Vernon, Alabama, reflected that Baird had purchased the car from a Vernon dealer. The public vehicle identification number had been altered and a search of the Oldsmobile revealed a case of current license plates from Alabama, California, Washington, Oregon and Montana. Miscellaneous items found in the trunk included telephone directories of various cities, magnetic license plate holders, the Carl Brown notary seal, and blank bills of sale identi-

1. 18 U.S.C.A. § 2313 provides:
   "Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. Defense counsel stressed an alternate interpretation of the agent's testimony, "[h]e said he got the car from Roger Bennett in Alabama," by contending it was just as reasonable to conclude that Roger Bennett was from Alabama, and not that Babb took possession there.

cal in form with that offered by defendant.

Roger Bennett was an associate of the defendant and had traveled with him from Washington State to California and thence to Kansas City, Missouri, arriving in late March or early April, 1963. The two separated in Kansas City and met again in Little Rock some time after the middle of May, 1963. They had other associates in Little Rock and stayed in various motels until Bennett finally rented an apartment. Neither was visibly gainfully employed.

About May 27, 1963, defendant and Bennett went to Alabama and procured license plates for several cars, including the Oldsmobile. They used the Carl Brown notary seal on the documents and purchased the license plates in various names picked at random from the collection of telephone directories. It is unclear whether or not defendant and Bennett drove the Oldsmobile to Alabama.

The testimony varied as to when the Oldsmobile was first seen in Little Rock, but it was prior to the Alabama trip. The date was most reasonably narrowed to May 26 or 27. Although "associates" were seen to drive the Oldsmobile during the first week of June, Babb came into sole possession on June 14, the day before his apprehension. On that day, June 14, the car bore California license plates which at defendant's request were removed by a friend's son. Alabama license plates were then affixed to the car. The date of departure is unknown but Babb planned a "business trip" to California with a witness' wife who wanted to visit her California relatives.

The defendant did not take the witness stand at the trial nor offer any evidence in his behalf.

■ Defendant's only challenge to the sufficiency of the evidence is that the

Government failed to prove that the car was in interstate commerce at the time it was received and concealed.[3] This, however, is a factual question for the jury's determination and we must affirm if the verdict is based on substantial evidence. Pilgrim v. United States, 266 F.2d 486, 488 (5th Cir. 1959).

■ There were no facts or inferences to be drawn that the interstate movement of the stolen car had ceased, but the contrary clearly appears. The recent trip to Alabama to procure license plates, the switching of license plates immediately after coming into possession, the numerous license plates and paraphernalia found in the car, and the intended trip to California, are, we think, sufficient to support the jury's conclusion that the car was still a part of interstate commerce when Babb took possession.

■ It is uniformly held "that the interstate movement of a car does not necessarily cease when the car stops and transportation of it into the other state ends" and that "it is a question of fact under the surrounding circumstances in each particular case." Schwachter v. United States, 237 F.2d 640, 644 (6th Cir. 1956). See also United States v. Cioffi, 253 F.2d 494 (2nd Cir. 1958); Williams v. United States, 244 F.2d 303 (4th Cir. 1957); Parsons v. United States, 188 F.2d 878 (5th Cir. 1951); and Seefeldt v. United States, 183 F.2d 713 (10th Cir. 1950).

On this point, defendant relies solely upon our opinion in Davidson v. United States, 61 F.2d 250 (8th Cir. 1932). There a three-count indictment charged (1) a conspiracy in violation of 18 U.S. C.A. § 408;[4] (2) the transportation in interstate commerce of a stolen vehicle; and (3) that the defendants did "willfully, unlawfully, knowingly and feloniously receive, conceal and store one [ve-

3. See Phillips v. United States, 206 F.2d 923, 924 (10th Cir. 1953) (per curiam), where, apparently within the bounds of its own facts, the court stated that, "removing the Kansas license plates from the automobile and affixing the Oklahoma license plates thereto was to prevent dis-

covery of the automobile and constituted concealment thereof." (Citing United States v. Guido, 200 F.2d 105 (2nd Cir. 1952) and United States v. Di Carlo, 64 F.2d 15, 16 (2nd Cir. 1933)).

4. Now 18 U.S.C.A. §§ 2311-2313.

hicle] * * * which had been stolen * * * and transported in interstate commerce * * *." A conviction under the first and third counts was reversed as to Davidson and one other because of insufficient evidence that they were connected with a conspiracy as charged in the first count. The court conceded that they were coconspirators but pointed out that "[t]here [was] no evidence nor any circumstance whatsoever which even remotely indicate[d] that these two defendants had any knowledge that this was an interstate car * * *." Id. at 253. Additionally, the third count was fatally defective in failing to charge that the automobile "was moving as or was a part of, or that it constituted, interstate or foreign commerce." Id. at 255. All the testimony and evidence indicated that Davidson was only connected with the "fencing" of the stolen automobiles, that the "fencing" was limited solely to one state, and that Davidson was completely unacquainted with his "coconspirators." Also, he was oblivious as to whether the cars furnished him were of an intrastate or interstate character.

We think a recital of the facts in the case at bar not only distinguishes it from Davidson but is sufficient to show substantial evidence to support the jury verdict.

■ We must take that view of the evidence that tends to support the prevailing party, and must accept as established all reasonable inferences to be derived from such testimony. Jaben v. United States, 349 F.2d 913 (8th Cir. 1965).

■ *Evidentiary Ruling.* During cross-examination of FBI Agent Gehring, defense counsel established that defendant was questioned some three and one-half hours prior to his incarceration. This detention consisted of intermittent queries relative to the various items found in the stolen car. There is no suggestion that defendant was mistreated in any fashion. He was permitted to call his attorney and the interrogation was not immoderate or excessive—neither was it continuous. Such interrogation was proper and amounted to a routine police investigation necessary to determine the facts of the crime for which defendant was arrested and the *particeps criminis*, if any. See Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1963).

Defendant's counsel laid great stress on this detention and sought to imply that its purpose was to wring a confession from defendant.[5] Thereafter on redirect examination the government attorney attempted to show that the interrogation was not directed solely to the stolen Oldsmobile or to the defendant, who now assigns as error that the redirect examination was an insinuation of defendant's guilt of other crimes, and, therefore, improper and prejudicial.[6]

---

5. Cross-examination of Agent Gehring by defense counsel:

"Q. Well, you said you were with him. What were you doing?
"A. One of us was sitting there.
"Q. Just sitting there but you weren't talking about anything, is that right?
"A. Occasionally we would ask him if he would care to furnish any other additional information concerning—
"Q. Well, the fact is you stayed here about three and a half hours trying to get him to confess to this alleged offense in this indictment, didn't you? Now, that's the truth, isn't it?
"A. No, it's not."

6. Redirect examination of Agent Gehring by the government attorney:

"Q. Now, with reference to Mr. Babb was this a continuous three and a half hour interview?
"A. It was not.
"Q. Were there any gaps in it—you said it wasn't continuous, just describe how it occurred.
"A. We asked him if he would like to discuss this, concerning the details of what he was doing in this car, and he related other matters, that we discovered in this car, to explain; there were different names on these things, on these various items found in the car, and we were asking about these different names, as well as asking about other individuals.
"Q. In other words, your investigation at the time wasn't confined to just one automobile, was it?

█ We do not agree and there are three reasons for our conclusion. In the first place, the redirect examination was not calculated to and neither did it infer that the defendant was guilty of other crimes. Exploration by the government attorney was to refute the possible inference that defendant had been subjected to intensive badgering calculated to elicit his confession. Secondly, the court sustained defendant's objection and immediately gave a cautionary instruction admonishing the jury not to consider the possible inference that defendant was involved in other crimes. And thirdly, the time consumed during the period of investigation was developed by defendant and having once opened the subject of the time lapse between arrest and incarceration, it was proper for the government attorney to counter under the doctrine of "verbal completeness." Cf. Newman v. United States, 331 F.2d 968, 970–971 (8th Cir. 1964), cert. denied, 379 U.S. 975, 85 S.Ct. 672, 13 L.Ed. 2d 566 (1965); Smith v. United States, 224 F.2d 58, 60–61 (5th Cir. 1955), cert. denied, 350 U.S. 885, 76 S.Ct. 138, 100 L.Ed. 780 (1955). Any relevant and competent evidence of guilt is not rendered inadmissible because it also tends to show the accused committed other offenses. Downey v. United States, 263 F.2d 552 (10th Cir. 1959); Mehan v. United States, 112 F.2d 561 (8th Cir. 1940). Proof of other crimes similar in nature is admissible to show motive and intent. Dranow v. United States, 307 F.

2d 545, 566 (8th Cir. 1962); Rizzo v. United States, 304 F.2d 810 (8th Cir. 1962), cert. denied, 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962).

*Prosecutor's Argument.* Finally, it is claimed that the government attorney made improper statements to the jury in his closing argument, thus depriving defendant of a fair trial. The most serious charge is that one of the prosecutor's statements alluded to the fact that the defendant did not take the stand in his own behalf.[7]

The jury was properly instructed and may well have concluded that the person who brought the car to Arkansas was someone other than the defendant, particularly since there was no direct reference to Babb. However, for the purpose of this appeal, we will assume that this statement standing alone would be an improper remark. Wilson v. United States, 149 U.S. 60, 13 S.Ct. 765, 37 L. Ed. 650 (1893).

█ It then becomes necessary for us to determine whether the comment was so prejudicial as to require reversal. We think not since defendant's own counsel had already called to the jury's attention that, "Babb did not take the stand in this case." In explanation of this failure to testify, defense counsel implied that the defendant could satisfactorily explain his involvement but such was unnecessary in view of the infirmity of the government's case. Defense counsel concluded his comment by admonish-

---

"A. No, it wasn't.
\* \* \* \* \*
"Mr. Coffelt:
"Now, if the Court please, I ask for a mistrial again on account of the statement made in the presence of the jury by the District Attorney.
"The Court:
"The phrase 'other matters' by itself doesn't constitute any prejudice and I instruct the jury that by no means should they consider an inference as to any matter—that is any question of any crime or otherwise—except the one we're here today trying. I'm going to deny your motion for a mistrial. Mr. Gallman, please be careful."

7. Closing argument by the government attorney:

" \* \* \* The court is going to tell you, I think that in determining the question of interstate commerce it is movement from state to state, but a car doesn't lose its interstate character the minute it gets inside the state. After all, if it did, the law wouldn't even get to the point of what it is designed to do. It's designed to furnish a way to prosecute people where [as in this instance] neither [the States of] Missouri \* \* \* nor Arkansas \* \* \*, could do it. This is the only place this man can be prosecuted for this crime. *The only person that can tell you the destination is the fellow that had it, I suppose. He hasn't seen fit to do so.* Now Mr. Coffelt would have you———" (Emphasis added.)

ing the jury not to condemn defendant but instead blame his attorney for the selection of a purely legal tactic.[8] The direct reference to defendant's failure to testify with the accompanying explanation was an invitation to the prosecutor to comment upon the subject and does not demand reversal. United States v. Feinberg, 140 F.2d 592, 154 A.L.R. 272 (2nd Cir. 1944), cert. denied, 322 U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562 (1944); Baker v. United States, 115 F.2d 533, 544 (8th Cir. 1940), cert. denied, 312 U.S. 692, 61 S.Ct. 711, 85 L.Ed. 1128 (1940); 8 Wigmore, Evidence § 2272 (McNaughton Rev. 1961); see Scanlon v. United States, 223 F.2d 382 (1st Cir. 1955); cf. United States v. Stromberg, 268 F.2d 256 (2nd Cir. 1959), cert. denied, 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959).

■ The case at bar was bitterly contested despite the fact that defendant did not take the stand or offer any evidence in his behalf. It is difficult at times to keep a trial like this within bounds, but certainly a prosecutor in his efforts to represent the Government is under no compulsion to submit to a defense counsel's provocation. See Isaacs v. United States, 301 F.2d 706, 736–37 (8th Cir. 1962), cert. denied, 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962).

A review of the entire record, including the jury arguments, convinces us that the defendant had a fair trial and that the record is devoid of any prejudicial error which would entitle defendant to a reversal. Kotteakos v. United States, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); Evenson v. United States, 316 F.2d 94, 95 (8th Cir. 1963); Homan v. United States, 279 F.2d 767, 771 (8th Cir. 1960), cert. denied, 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88 (1960); Fed.R.Crim.P. 52.

The judgment of conviction is affirmed.

---

**8.** Closing argument by defense counsel:
    "Babb did not take the stand in this case. I am the one that made this decision. If I made a mistake in this regard, then don't charge him with it. Charge it up to me. I have gone on the theory that they have utterly failed to prove that allegation [interstate movement] of this indictment."