Felton MANUEL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–43.

Court of Criminal Appeals of Oklahoma.

Sept. 18, 1975.

E. Melvin Porter, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Harold T. Garvin, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Felton Manuel, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Okmulgee County, Case No. CRF–72–98, for the offense of Murder, in violation of 21 O.S.1971, § 701. His punishment was fixed at Life imprisonment, and from said judgment and sentence his appeal has been presented to this Court.

As this case requires reversal, a complete statement of the facts is unnecessary. The evidence adduced upon trial revealed that one Arlantus Evans died of extensive head injuries inflicted when the defendant struck him with a pool cue at the Sunset Cafe in Okmulgee, Oklahoma. In a tape

recorded statement admitted into evidence, defendant contended that he struck the deceased in self-defense when the deceased approached him threatening to shoot him and reaching for where deceased commonly carried a gun. In that statement the defendant also stated that the deceased had previously shot him and had communicated further threats through others to do so again. However, at the time of the fatal and sudden encounter defendant did not actually see the deceased with a gun, and none was found on his body.

In the first of his two assignments of error, defendant contends that he was deprived of the right to trial by an impartial jury under the Sixth Amendment to the United States Constitution and Article II, § 20, of the Oklahoma Constitution. Specifically, the defendant complains that during voir dire examination he was not informed that a venireman and ultimate juror, Mr. Cunningham, was the husband of the District Attorney's local chief secretary. The State responds that defense counsel failed to exercise due diligence in ascertaining whether such a relationship existed, the question propounded to that venireman in this regard was ambiguous, that venireman otherwise indicated he could sit as a fair and impartial juror, the record does not support the allegation that such a relationship existed, the assignment was not properly preserved for review on appeal, and any error was harmless in view of the evidence presented.

Mr. Cunningham was the fourth venireman to be examined by defense counsel, and an understanding and appreciation of this assignment requires that attention be additionally directed to the voir dire of the first three veniremen so examined. The most pertinent portion of the voir dire examination of these four veniremen is reflected in the separate transcript filed with the trial court on October 16, 1972, respectively as follows:

"Q. And do you have any relatives on any law enforcement agency such as the Sheriff's Office or the Police Department?

"A. [MRS. LOLLIE] No.

"Q. The District Attorney's Office doesn't represent you in any matter?

"A. No.

*    *    *    *    *    *

"Q. Mrs. Christy did you hear the questions projected to Mrs. Lollie?

"A. Yes.

"Q. Would your answer differ any way substantially?

"A. No, they would not." (Tr. 8)

*    *    *    *    *    *

"Q. Are you personally acquainted with Mr. Webb [District Attorney] or his Assistant or anybody in his office?

"A. [MR. WILSON] No, not that I know of. (Tr. 12)

*    *    *    *    *    *

"Q. *Mr. Cunningham, would your answers to the questions projected to the other members of the jury differ any substantially?*

"A. *No.*" (Tr. 15)

Similar questions regarding acquaintanceship with the District Attorney's Office were subsequently propounded to other veniremen (Tr. 20 and 25), whereas a more generalized examination was directed to the remaining veniremen. Defense counsel explains he did not learn that Mr. Cunningham's spouse was an employee of the District Attorney's Office until the second day of trial proceedings while the jury was in deliberation. Upon rendition of the verdict and before the jury was polled, defense counsel in open court asserted that he desired for the record to reflect that Mr. Cunningham was the husband of the chief secretary to the District Attorney, but then accepted the invitation of the trial court to present this matter in his motion for new trial. (Tr. 176)

Especially since life imprisonment was the only sentence assessable upon conviction for the offense charged, we agree that defense counsel should have ex-

ercised greater care in his examination of the prospective jurors to discover any potentially prejudicial association with law enforcement agencies. As set forth in *Looper v. State,* Okl.Cr., 381 P.2d 1018, 1023 (1963), this Court has repeatedly held that:

> "Counsel on voir dire examination should inquire into all matters within his knowledge which might affect the qualification of the jurors, and where this is not done, the right to challenge a juror or the jury panel, is considered to have been waived. *Hamilton v. State,* 79 Okl.Cr. 124, 152 P.2d 291."

However, on no less than four occasions during voir dire examination of other veniremen, defense counsel explicitly inquired regarding acquaintanceship with the District Attorney's Office, thereby manifesting his very legitimate interest in discovering and exploring any such association which might prejudice the defendant. The venireman's marriage to an employee of the District Attorney's Office was certainly known to himself, and in all probability known to the prosecutor or his assistant and perhaps the trial court in such a rurally populated area. We are persuaded that had defense counsel's assertion in open court not been true, either Mr. Cunningham or the prosecution would have immediately denied the relationship in the interest of an expedient resolution of the matter. Further, under the circumstances above set forth we find that any error was timely and properly presented in defendant's motion for a new trial.

In *Carr v. State,* 65 Okl.Cr. 201, 84 P.2d 42, 47 (1938), this Court observed that:

> ". . . A waiver involves the idea of assent and assent is primarily an act of the understanding. It presupposes that the person to be affected has knowledge of his rights, but does not wish to enforce them. He cannot properly be said to waive that of which he had no knowledge. It must appear that the defendant had knowledge of the disqualification of

a juror before it can be held that he waived the objection.

> \*    \*    \*    \*    \*    \*

> ". . . 'The impartiality of the jury goes to the very foundation of the accused's liberty, and where evidence is introduced such as is disclosed by this record of a convincing character to show that there is a strong probability that the accused was not accorded that fair and impartial trial guaranteed to him by the Constitution and laws of this state, and the rebuttal evidence is of a very unsatisfactory character, the verdict should be set aside and a new trial granted. It requires the unanimous consent of the jury to convict, and a fair and impartial jury is not had by 11 impartial men and one man shown to be prejudiced within the definition of actual bias.' "

In view thereof, we are of the opinion that the nonfeasance of at least the veniremen and most probably the prosecution in failing to inform the defense counsel of the situation was not commensurate with principles of fundamental fairness. We recognize that in other voir dire examination Mr. Cunningham indicated that he was of the opinion that he could sit as a fair and impartial juror, and that the record before us does not establish that he failed to do so. In *Thompson v. State,* Okl.Cr., 519 P.2d 538, 541 (1974), we stated that:

> ". . . [T]his Court has repeatedly held that it is not error alone that reverses judgments of convictions of crime in this State, but error plus injury, and the burden is upon the appellant to establish to the appellate court the fact that he was prejudiced in his substantial rights by the commission of error, . . ."

However, since defense counsel was not informed of the relationship after he had manifested his interest therein by specific interrogatories incorporated into a more general examination at a time when the veniremen and most probably the prosecution were knowledgeable thereof, he was

effectively deprived of an opportunity to fully explore this area as a potential foundation for a challenge for cause. Additionally, the defendant was at the very least deprived of knowledge upon which he could intelligently exercise a peremptory challenge, for we do not doubt that any defense attorney would so challenge a prospective juror with such a kinship to an employee of his adversary when, as here, circumstances otherwise permit.

While we are therefore left to speculate upon whether the defendant was prejudiced thereby, we recognize that the relationship itself approached being a basis for challenge for cause. In *Thompson*, supra, we held in part that a juror who was the brother of a deputy sheriff serving as a witness in chief for the State was subject to challenge for cause because of his close relationship with the deputy sheriff. Also, in *Scrivener v. State*, 63 Okl.Cr. 418, 75 P.2d 1154 (1938), we held that all doubts regarding juror impartiality must be resolved in favor of the accused. In view of the foregoing, we are of the opinion that the defendant was effectively denied full enjoyment of his right to conduct voir dire examination of this venireman as a possible basis for challenge for cause, and deprived of information upon which to intelligently exercise a peremptory challenge against him.

In his second assignment of error the defendant contends that improper comment by the prosecutor during final closing argument was fatally prejudicial. The State urges that such argument was provoked by defense counsel, and within the bounds of proper retaliatory comment. Pertinent portions of the closing argument by the defense and final argument in behalf of the State were respectively as follows:

"[MR. PORTER]: . . . the District Attorney's Office sure can't argue or. try to preach to you when I sit (sic) down that we have manufactured any evidence or that this Defendant has been coached to conceal any evidence because every bit of the evidence and testimony in this lawsuit came from witnesses called by the District Attorney's Office.

. . . Now, you know, on the other hand, I can't help but feel by Mr. Smith's argument that he's trying to tear down and discredit the testimony that he caused to be introduced in this trial, that he brought forth to you to listen to and then in the same vein that that's his evidence and his testimony that he's bound by from the State's viewpoint. He tries to tear it down. *He didn't have to introduce the statement of Felton Manuel. He didn't have to do that at all. Then that would put the burden on our shoulders to make the decision as to whether or not Felton Manuel should take the stand and testify in his own defense.* We couldn't force him to do it and we certainly didn't force him to do it, even though we knew he had the statement and listen to this. . . . Now, they took that statement, they recorded it. They didn't have to record it, but they did and Felton Manuel told them what happened and he's the only witness in this Court Room, he's the only witness in this Court Room who has told this Jury and this Court what happened there and they are bound by that testimony. . . . He's standing up and the man is down on the ground or down on the floor and even if that testimony was taken for face value, it certainly is contradicted by the testimony of Manuel because Manuel said he was on the floor and you know who was asking him those questions, Mr. Smith, the District Attorney. . . . Now, let's take the facts. Here's a man who has been shot once and that's the State's testimony. Here's a man who testified that the decedent had.tried to run over him and that's the State's testimony. Here's a man who said he had jumped him several other times and that's the State's testimony.

. . . *Now if it bothers you ladies and gentlemen of the Jury as to why Felton Manuel didn't take the witness stand and testify, then you remember*

*this, he did.* He testified to any question the District Attorney asked him and he did it free and voluntary on his part and he even did it when he didn't have a lawyer there who would tell him not to—I suspect if I had been representing him at that time I would have told him, you don't talk to the District Attorney's Office about this at all unless at least I know what you're going to say but he didn't have that so *he testified in this trial more freely, more freely than he could have testified if he had taken the stand and testified for two hours.* He testified for the State more freely and he asked—he answered every question they asked him . . . They are trying to ask you in one vein to believe witnesses who saw nothing and in the next vein not [to] believe this man who was there. . . . Is he going to say everything he said on that tape is a lie and everything Mr. Huddleston said is the truth, yet Mr. Manuel is his witness and Mr. Huddleston is his witness. He's going to ask you to believe one of his witnesses and not believe the other.

. . . (Tr. 141–144, 149–150 and 159)

"MR. WEBB: . . . Now Mr. Porter says, are we going to ask you to believe one of our witnesses and not believe the other. No, we are not asking you that because this Defendant isn't our witness and when we put on his statement or his conversation or his excuses, that doesn't make him our witness, Mr. Porter and you know that and you know better than to try to convince this Jury that the fact we took the statement and put him on that that makes him our witness, because it does not. You know we *can't put him on the stand because there's some things I wouldn't dare ask him because they would reverse this case after he's convicted if he hadn't of opened the gate on it. That's why he wasn't on that witness stand.*

"MR. PORTER: I object to that and except to that, Your Honor.

"MR. WEBB: If he hadn't of brought it out to you—he brought it out.

"THE COURT: Just a minute, Mr. Webb.

"MR. PORTER: I object to that and take exception to it.

"THE COURT: Exceptions are overruled. Continue, please.

"MR. WEBB: I think under the law and since he opened it up, *I could tell you why he didn't take the witness stand. I'm not going to but—*

"MR. PORTER: I object to that and take exception to it.

"THE COURT: Mr. Webb, you're getting on the borderline.

"MR. WEBB: He opened the gate.

"THE COURT: I understand he did. I'm going to overrule the objection, but—

"MR. WEBB: I'm not going to mention one thing on it. I know where I am on this. *I'm not going to tell you why but there's reasons why he didn't take the witness stand. Once he did I could ask him questions and he would have to relate things to you—*

"MR. PORTER: If the Court please, I'm going to object to that and I move that we declare a mistrial even after being admonished by the Court, he's pursued the matter deper (sic) and further. We strongly object to it.

"THE COURT: I'm going to overrule the objection, but Mr. Webb, leave that subject right where it is.

"MR. WEBB: I'll drop it.

"MR. PORTER: Exception.

"THE COURT: Exceptions are allowed.

"MR. WEBB: *But he had a right to take that stand and he didn't.* . . ."
(Tr. 160–162 Emphasis Added)

In *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the United States Supreme Court held that the Fifth Amendment, in its direct application to the federal government and its

bearing on the states by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt. Oklahoma has had the *Griffin* rule since territorial days. See, *Wilson v. Territory,* 9 Okl. 331, 60 P. 112 (1900). Title 22 O.S.1971, § 701, which encompasses the *Griffin* rule, states:

"In the trial of all indictments, informations, complaints and other proceedings against persons charged with the commission of a crime, offense or misdemeanor before any court or committing magistrate in this State, the person charged shall at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption against him nor be mentioned on the trial; if commented upon by counsel it shall be ground for a new trial."

Clearly, standing alone the prosecutor's remarks in the instant case would unquestionably have constituted fundamental error. However, under the general policy that in argument each party has the right to repel an aggressor, seasoned by reason and logic to not exceed the delicate line that separates those remarks calculated to prejudice the other party and those that merely allow one to stand his own ground, a number of cases hereinafter discussed have recognized the invited error doctrine in this context. Also, see *Babb v. United States,* 351 F.2d 863 (8th Cir. 1965) and the authority therein collected.

For the purpose of examining what defense comment will justify retaliatory argument by the State upon the defendant's failure to testify, and delineating the extent to which the prosecutor may so retaliate, we will here briefly survey the most pertinent prior decisions of this Court. In *Cleary v. State,* Okl.Cr., 491 P.2d 782 (1971), *Nichols v. State,* Okl.Cr., 480 P.2d 628 (1970), and *Humphrey v. State,* Okl. Cr., 452 P.2d 173 (1969), we recognized that defense counsel had invited comment by the State upon the defendant's failure to take the witness stand, but further held that such comment was excessive. Notwithstanding this error, we resolved that under the facts and circumstances of those cases any prejudice could be cured by modification of the sentence imposed in view of the sufficiency of the evidence to support the verdict.

In *Cleary,* we found repeated references to the defendants' failure to testify improper. There defense counsel argued that the defendants could not take the witness stand since they would then have to incriminate themselves regarding another offense upon which evidence had been adduced, and the prosecutor commented in part as follows:

" 'Now these defendants didn't take the witness stand, and . . . Mr. Berry has told you why, because they would have placed themselves in jeopardy of another crime . . .

" 'They are sitting right here. Now, have they told you anything about what happened, have they disputed any of the State's evidence in this case? They have not; they have not, except through Mr. Berry's closing argument, . . .

" 'And you can judge demeanor from this witnesss stand, and he is the only one of them that was out there that you can judge the demeanor of because nobody else was up there on the witness stand except the State's witnesses, this is the one that you've got to judge.' " (at page 784)

In the hope for a more lenient sentence, defense counsel in *Nichols* adopted the strategy of pleading his clients guilty to the jury, and asserted that they did not testify in the interest of conserving the jury's time. The prosecutor then argued as follows:

" 'Now, Mr. S. would have you believe that he didn't want to waste your time putting these defendants on the witness stand. I wonder why he didn't put these defendants on the witness stand. We

don't know anything about these defendants, do we. Maybe if they had got on the witness stand we'd know a little bit more about them. But he didn't want to take that chance, did he. You think about that.' " (at page 630)

In recognizing this to be excessive retaliatory comment, we there reasoned that:

"Though this has been held to be harmless error and not grounds for reversal, it still has its tendency to prejudice the defendant. An intelligent jury is caused to speculate upon defendants previous record, and to other reasons for refusing to testify. Under any circumstances it is highly improper and the better practice is not to permit such practice." (at page 631)

Finally, in *Humphrey* the defendant was charged with a controlled drug violation as a subsequent offense, and defense counsel explained his failure to testify as follows:

" 'I could have put the Defendant on today, and he got up there [sic] and Mr. McKinney would go into a tirade of the fourteen months that he has spent in the penitentiary back in 1964 for the illegal sale of a stimulant, this charge that he is talking about.

" 'That is not necessary, it is in the Information. And, we all know about it. What good would it do for Granville to get up there and say, "Well, I didn't know and I didn't do it."

" 'He has already said that the day when he pleaded not guilty. And he has got a former conviction, we know that and I stipulated to it.' " (at page 175)

The prosecutor thereafter responded in part as follows:

" 'He said that all he could have done was to say I don't know and I didn't do it, but on the other hand, we would have let you know about a five page *rap sheet* of what this Defendant has done since 1950 and as far as his criminal record is concerned. [Emphasis ours]

" 'It would have let you know that he has been convicted of burglary, that he has been convicted of illegal possession of stimulants before and in addition to that one right here that he is charged with. It would have let you know all about his *police record* . . . [Emphasis ours]' " (at page 175)

We there recognized that in view of the defense comment inviting response by the State, the prosecutor could properly have argued that had the defendant taken the witness stand he would have been subject to crossexamination as to the prior convictions properly before the jury and the facts relevant to the subject offense. However, in referring to a five page rap sheet, felony convictions not in evidence, and his police records, the prosecutor had committed highly improper and prejudicial error. We then held that in a close case such remarks would require reversal, but in view of the evident proof of guilt such error was cured by modification.

In *Yeager v. State*, 43 Okl.Cr. 318, 278 P. 665 (1929), *Cherry v. State*, 33 Okl.Cr. 37, 241 P. 833 (1925), and *Soper v. State*, 22 Okl.Cr. 27, 208 P. 1044 (1922), we found no impropriety in the prosecutor's responding to the explanation of defense counsel as to why the defendant did not take the witness stand. However, since *Cherry* was reversed upon other grounds and is not in align with subsequent decisions of this Court, we do not deem that case to be particularly persuasive in this regard. In *Yeager,* we upheld retaliatory comment after defense counsel had asserted that the defendant did not testify because he had made a truthful statement which had already been admitted into evidence. In *Soper* the defendant was convicted of perjury, and defense counsel argued as follows:

" 'Now, gentlemen, we did not put the defendant on the stand for the reason that he would have testified to the same things as introduced. What was the use of taking up your time and the time of the court?' " (208 P. at page 1046)

Thereafter the prosecutor commented in part that:

> " '. . . As counsel for the defendant has undertaken to explain to you why they did not put Soper on the stand, I take it that in reply to that argument I should be allowed, and I believe the court will permit me to draw my conclusions as to why he did not take the stand, and that is, . . . that had he taken the stand he would have been subjected to a cross-examination, he would have been subject to the rules laid down by the law with reference to the attack upon his reputation for truth and veracity, the same as any other witness here.' " (208 P. at page 1046)

In upholding the retaliatory comment of the prosecutor in that case, which response we particularly approve, the Court stated:

> "It would be unreasonable to contend that counsel for the defendant might comment upon the fact that his client did not take the stand in his own behalf and give seemingly plausible and sufficient reasons therefore (sic), and then assert that the opposing counsel would have no right to question or comment upon the reasons given. If that were the rule, it would enable every defendant, at his pleasure, to inject reversible error into his case, or to assert good and sufficient excuses· for not testifying, and close the mouth of the prosecuting attorney from controverting in any way the reasons given by defendant's counsel, or making any comment upon the reasons given." (208 P. at page 1046)

In the instant case defense counsel in his closing argument effectively asserted that because the State introduced a statement previously given by defendant, the defendant had testified through that statement as a witness for the State at the trial, and therefore did not need to take the witness stand in his own defense. The defense attorney also suggested that this statement was equivalent to the sworn testimony of other witnesses testifying for the State, and argued that the State was bound thereby since the defendant effectively appeared as a witness for the State.

In response to the closing argument of the defense, the prosecutor essentially replied that the introduction of the defendant's statement did not make the defendant a witness for the State, and that the State could not call the defendant as a witness since this would require reversal of the case on conviction. The prosecutor also declared that the defendant had a right to testify in his own defense but chose not to because he would then be subject to cross-examination. However, the prosecutor went further and inferred that this would have introduced prejudicial matter known to the prosecution but unknown to the jury.

We are of the opinion that the retaliatory argument of the State was appropriate and responsive to the explanation of defense counsel as to why the defendant did not testify, except to the extent that he inferred that he had knowledge of matters prejudicial to the defendant which would have been revealed had the defendant testified, and upon the strength of his own veracity thereby caused the jury to speculate that evidence further detrimental to the defendant would have been introduced had he taken the witness stand. To that extent the prosecutor's remarks were excessive retaliatory comment and clearly improper. The prosecutor should have here limited himself to explaining that: the introduction of defendant's statement did not make him a witness for the State; the defendant's statement was not sworn testimony; the defendant had the right and privilege to testify under oath, but could not be compelled to do so by the State; that if the defendant had testified, he would have been subject to cross-examination regarding the facts giving rise to the charge, and would have been subject to attack upon his reputation for truth and veracity the same as any other witness. If upon retrial defense counsel makes such argument, he should expect appropriate re-

taliatory comment, however, the State is cautioned to not exceed the bounds herein delineated.

 Under the evidence here adduced and the instructions of the trial court, the jury was called upon to resolve whether the defendant was guilty as charged of premeditated murder, guilty only of the lesser included offense of first degree or voluntary manslaughter committed in the heat of passion, or not guilty because acting in self-defense. See, *Morgan v. State,* Okl.Cr., 536 P.2d 952 (1975), for a discussion of the somewhat subtle distinctions between murder and these imperfect and perfect defenses thereto. The proof established a close case for the determination of the jury and, due to the absence of any other direct evidence as to the circumstances immediately preceding the fatal altercation, the conclusion of the jury necessarily depended upon the extent to which they believed or disbelieved the defendant's explanation thereof. Yet, despite these considerations the jury was called upon to decide whether the defendant acted with malice, in the heat of passion, or upon reasonable necessity. Their decision was fully resolved against the defendant. Considering the errors complained of together, we are of the opinion that in the interest of justice this case must be reversed.

For the above and foregoing reasons, this case is, accordingly, reversed and remanded for new trial.

BRETT, P. J., concurs in results.

BLISS, J., concurs in part and dissents in part.

BLISS, Judge (concurring in part and dissenting in part):

I concur in this opinion, except I dissent as to the views expressed and the holding made in reference to defendant's second assignment of error. I think the prosecutor's retaliatory remarks were goaded by defense counsel in making in the first instance the unnecessary comment about defendant's failure to take the witness stand, and that the prosecutor's remarks were thoroughly justified.