Kenneth H. TIBBETTS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–83–26.

Court of Criminal Appeals of Oklahoma.

April 24, 1985.

Sandra Kay Terrill and Ken Sue Doerfel, Terrill & Doerfel, Lawton, for appellant.

Michael C. Turpen, Atty. Gen., Máry F. Williams, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

On appeal from his conviction of Rape, Kidnapping, and Sodomy, Case No. CRF–81–660, and respective sentences of fifty-five (55) years, ten (10) years and ten (10) years imprisonment from the District Court of Comanche County, Oklahoma, the appellant, KENNETH H. TIBBETTS, hereinafter referred to as appellant, raises four assignments of error. We reverse.

As this case requires reversal, a complete statement of the facts is unnecessary, and only a discussion of the merits and the assignments of error will be addressed. The evidence adduced at trial revealed that twelve year old L.A. was kidnapped, raped and forced to commit oral sodomy at a wildlife refuge in Comanche County. By way of testimony from the prosecutrix and her companion, the appellant was identified as the perpetrator of the crime. The appellant was arrested by Lawton police detectives based on a physical description, clothing description and an automobile description given by the victim and her companion to authorities. The physical evidence linking the appellant to the crime consisted of clothing, his car and items recovered from

him, including a wide blade knife. Also, blood tests and tire track photographs were introduced, albeit, inconclusively.

There appeared to be ample time for the victim to get a good look at the appellant. She also testified that he told her to turn away from him while he dressed, and not to identify him. She did fail to pick him out of a pre-trial line-up, but described her failure to do so as being caused by her nervousness.

Appellant's first assignment of error is that he was denied a fair trial guaranteed him by the United States Constitution and the Constitution and Statutes of the State of Oklahoma in that the jurors at his trial did not possess the necessary prerequisite of fairness and impartiality. Specifically, the appellant complains that, during voir dire examination, he was not informed that one of the prospective jurors and ultimate juror, Ms. Landrun, was the mother-in-law of a Comanche County deputy sheriff. Further, that Ms. Landrun's daughter was the victim of a previous indecent exposure. Also, that her son-in-law was attempting to gain employment with the District Attorney's Office at the time of the trial. The state responds to these arguments by asserting that defense counsel failed to exercise due diligence by failing to inquire into all matters during voir dire examination which might affect the qualification of the jurors, and thus waived his right to challenge the juror.

Ms. Landrun was selected to replace the appellant's second preemptory challenge, and an understanding of this assignment requires that the previous voir dire questions of the other jurors be examined.

On numerous occasions, jurors were asked, both individually and as a group, if any member of their family had been the victim of a crime similar to the case at trial. They were asked if they knew any of the witnesses, parties, attorneys or family members involved in the case. They were also asked if there was any reason they could not sit as a fair and impartial jurors, and they were asked by the court if any

one of them had any "confessional" to give. Juror Landrun was specifically asked the following questions when she was selected from the jury panel by the District Attorney:

Q And do you know anybody in the District Attorney's office?

A No.

Q Do you have, and—just a moment. Okay, you understand, ma'am—you have been listening to all these questions that I have been asking so far this morning. You have a general idea of the type of questions I'm asking at this particular point and time?

A Right.

Q Do you have any questions over any of these things that have been brought up to this point?

A No.

And in response to questions from defense counsel, Juror Landrun responded as follows:

Q Okay. You've heard the question that I've asked some of the other potential jurors this morning. Would your answers be any different—

A No.

Q —to the general question?

A Right.

(Tr. p. 94).

In the very first part of the trial, the District Attorney inquired of the twelve jurors drawn first, but in the presence of Juror Landrun: "Now, has anyone had any dealings with the District Attorney's office, such as having been a witness in court or involved in any other manner in the last few years?" (Tr. p. 6).

 It is clear from a review of the record that general questions were propounded to the jury panel. We agree with the State that defense counsel should have exercised greater care in examining prospective jurors. *See Looper v. State*, 381 P.2d 1018, 1023 (Okl.Cr.1963). This court has held that:

Counsel on voir dire examination should inquire into all matters within his knowledge which might affect the qualification of the jurors, and where this is not done, the right to challenge a juror or the jury panel, is considered to have been waived. *Hamilton v. State*, 79 Okl.Cr. 124, 152 P.2d 291.

However, the attorneys in this case inquired of the prospective panel in general terms as to their relationship with the witnesses, the District Attorney's Office, the Police Department and the Sheriff's Office. While no one specifically asked the panel if they had relatives in the Sheriff's Office, the general parameters of the voir dire examination should have elicited a response from Juror Landrun. The state argues that the general questions propounded to the jury were insufficient to elicit the information later learned about Juror Landrun's relationship with the Sheriff's office, and thereby any objection is waived. In *Carr v. State*, 65 Okl.Cr. 201, 209, 84 P.2d 42, (1938) and *Manuel v. State*, 541 P.2d 233, 236 (Okl.Cr.1975), this Court held:

... [A] waiver involves the idea of assent and assent is primarily an act of the understanding. It presupposes that the person to be affected has knowledge of his rights, but does not wish to enforce them. He cannot properly be said to waive that of which he had no knowledge. It must appear that the defendant had knowledge of the disqualification of a juror before it can be held that he waived the objection....

Thus, in light of the information learned about Juror Landrun; that her son-in-law was at the time a Sheriff's Deputy in Comanche County; that he was seeking employment with the District Attorney's Office; and that her daughter had recently been a victim of a sex related crime; and, also, that the Deputy Sheriff was in and out of the courtroom during the trial; it is apparent that she was not an impartial juror despite her saying she could be one. Her failure to inform the appellant's trial counsel and the court of her relationship is "not commensurate with the principles of fundamental fairness." *Id.* at 236. She

would not be exempt from jury duty due to her relationship with the deputy, but that information should have been made known to all parties. Since the defense counsel was not informed of the relationship after he had manifested an interest therein by specific interrogatives incorporated into a more general examination at a time when the juror knew of the relationship, and the trial counsel made it clear of the type of relationship he was looking for, the appellant was effectively denied the opportunity to gain knowledge to base a potential challenge for cause, or, at least, a preemptory challenge. As stated in *Manuel, supra*, "... we do not doubt that any defense attorney would so challenge a prospective juror with such a kinship to an employee of his adversary, when, as here, circumstances otherwise permit." *Id.* at 237.

In *Allison v. State*, 675 P.2d 142 (Okl.Cr. 1983), this Court found that a juror who was the son-in-law of a person who had been employed by the District Attorney's Office prior to trial was not a basis for challenging that juror for cause; and therefore, not grounds for a new trial. The case at hand is distinguishable from *Allison* in that the juror in that case, at the evidentiary hearing, explained his failure to come forward as his understanding a question to be: Did he know any person "presently" employed by the District Attorney's Office? In that case, the person in question had not worked for the District Attorney's Office for some seven months prior to the date of trial.

In the case at bar, the Deputy Sheriff was trying to get a job with the District Attorney's Office at the time of the trial. The juror was not produced at the motion for new trial evidentiary hearing, so there is no way to know if she had any communications with her son-in-law. The juror knew of information requested by the attorneys regarding family members having been victims of crimes. Also, the juror was obviously aware that her son-in-law was present at trial. It is conceivable that even the District Attorney knew he was at the trial, although there is no evidence that the prosecution was aware that Juror Lan-

drun was related to the Deputy Sheriff. Through his handling of that case, the District Attorney was aware that Juror Landrun's daughter had been a victim of a sex related crime. The cumulative effect of the circumstances in the case at hand certainly have more impact on the jury than the circumstances in *Allison.*

All doubts regarding juror impartiality must be resolved in favor of the accused. *Scrivener v. State*, 63 Okl.Cr. 418, 75 P.2d 1154 (1938). In view of the foregoing, we are of the opinion that the defendant was denied full enjoyment of his right to conduct voir dire examination as a possible basis for challenge for cause, and deprived of information upon which to exercise intelligently a preemptory challenge against him. *Manuel, supra* at 237.

Appellant's other argument relating to the jury selection process in the case reveals a series of trial procedures that he alleges denied him an impartial jury. One juror at first stated she could not sit impartially on the panel, but was then rehabilitated by the State and was excused by defendant's last preemptory challenge. The defendant challenged that juror for cause, was overruled, and used his last peremptory challenge to excuse her. The next juror drawn was a vehicle maintenance man for the City of Lawton who was acquainted with the policemen involved in the case. The appellant's claim is without merit as to the improper seating of the juror who was a maintenance man for the Lawton Police. He was adequately examined throughout his voir dire, and the defense counsel was satisfied with him on the jury, for she failed to challenge him for cause; in fact, defense counsel "passed him for cause." (Tr. p. 150.)

In total, the appellant alleges that there were three partial jurors on his jury. This Court finds only one: Juror Landrun. One partial juror is enough to require remand to assure the appellant receives a fair trial despite the strong case against him. The defendant was deprived of information that the juror knew was important;

information that could have lead to a different jury to sit on this case. Juror Landrun's failure to come forward and, at least, be examined to determine if she was biased or prejudiced in any way is sufficient denial of the appellant's right to a fair and impartial jury to require reversal.

The jury trial system is founded on the impartiality of a body of peers selected by counsel. It is only by preserving that impartiality that prejudice and mockery can be prevented from destroying the basic rights to a fair trial that all citizens possess. In this case, there was ample evidence to convict the defendant. The fundamental error was in the selection of the jury.

Accordingly, for the foregoing reasons, the judgment and sentence of the District Court is **REVERSED AND REMANDED** for new trial.

BRETT, J., concurs.

BUSSEY, J., dissents.