Charles Oscar PETERS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–84–15.

Court of Criminal Appeals of Oklahoma.

Jan. 13, 1986.

**800**

E. Alvin Schay, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., State of Okl., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Charles Oscar Peters was convicted of Murder in the First Degree and sentenced to life imprisonment. He raises a single issue on appeal: Whether the fact that one juror had three relatives who worked for the Oklahoma State Bureau of Investigation, only one of which defense counsel was apprised during voir dire, is a sufficient basis to reverse the judgment and sentence?

During voir dire of the jury, one venireman, Evelyn Hadley, volunteered the fact that she had a daughter, Susie Rust, who worked for the Oklahoma State Bureau of Investigation. On further questioning, she stated that her daughter was not allowed to discuss her work and that she only knew her work consisted of collecting data from the District Attorneys across the State and putting it into a computer. She affirmed that this fact would not cause her to give greater credibility to witnesses from the O.S.B.I.; that she did not personally know any of the witnesses. She was never asked if she had relatives or friends who were involved in law enforcement.

During the second day of trial when one of the O.S.B.I. agents was testifying, her daughter-in-law, Sherry Hadley, entered the courtroom and remained as a spectator through his testimony and that of another O.S.B.I. agent. Later that evening, Juror Hadley spoke with her daughter-in-law and asked why she attended the trial. She said she came to hear testimony offered by her boss, one of the O.S.B.I. agents testifying. This was done to prepare her in case she was ever called to testify.

Appellant's counsel asserted that had he known Juror Hadley had this relative, and actually a third one, a niece, working for the O.S.B.I., he would have exercised a peremptory challenge to excuse her. At a hearing conducted on appellant's motion for new trial, Mrs. Hadley testified that she did not volunteer during voir dire the information that her daughter-in-law and niece also worked for the O.S.B.I. because she did not think of it and was pretty shook up at the time. She also said that seeing her daughter-in-law in the courtroom had no effect on her deliberations, and that having three relatives working for the O.S.B.I. did not cause her to underscore the testimony of the O.S.B.I. agents.

The evidence offered against appellant at trial included an abundance of circumstantial evidence including that presented by eight O.S.B.I. agents. However, the evidence, though circumstantial, was strongly indicative of appellant's guilt. The evidence which Mrs. Hadley's daughter-in-law's boss offered was that of ballistics. He stated that the hollow point bullets recovered from the victim's body were fired from a rifle with micro-grooving and that the rifle recovered from appellant's apartment, a Marlin, was the only rifle he knew manufactured with micro-grooving. A friend testified that appellant had borrowed this gun from him a few days prior to the homicide. This friend asked appellant if he was going hunting. Appellant said no, that he only had fourteen shells, but that that was enough for what he was going to do. Hollow point bullets were also found in appellant's apartment.

There were a number of shoe prints in the vicinity of the homicide and in the sand by the creek from which the victim's body

was recovered which closely corresponded with the pattern on a pair of tennis shoes appellant was wearing when arrested. One witness heard gunfire from the victim's property between 5:00 and 7:00 p.m. on August 21, 1982. Another witness saw a man matching appellant's description on the road crossing the creek where the victim's body was found at approximately 6:30–7:30 p.m. that same evening, carrying a rifle and wearing camouflage. Camouflage attire was recovered from appellant's apartment. Appellant admitted being at decedent's place and using his truck on the evening of the homicide, but denied killing the victim.

A number of witnesses testified that appellant and the victim, his uncle, had had a dispute a few weeks prior to the homicide, and that appellant had been required to move off of his uncle's property. Also, appellant had been without money at this time but was arrested with two fifty dollar bills, a denomination the victim often carried.

We consider the fact alone that Mrs. Hadley did not volunteer during voir dire the additional information that her other relatives worked for the O.S.B.I. of no great consequence. She was not asked questions to elicit that type of information. She was more than willing to inform the attorneys and court that her closest of the three relatives worked for the O.S.B.I. That relationship was obviously the most prominent to her.

■ Had Mrs. Hadley advised the attorneys and court that three of her relatives worked for the O.S.B.I., this alone would not be sufficient to have challenged her for cause. 12 O.S.1981, § 572; 22 O.S. 1981, §§ 658–660. Moreover, failure to inquire on voir dire of a subject under challenge constitutes waiver. *Smith v. State,* 651 P.2d 1067 (Okl.Cr.1982); *Greathouse v. State,* 503 P.2d 239 (Okl.Cr.1972); *Roberson v. State,* 456 P.2d 595 (Okl.Cr.1968). It is the duty of defense counsel to investigate on voir dire those matters which affect a venireman's qualifications to sit as a juror. That which would have been disclosed by reasonable diligence during voir dire cannot later be made grounds with which to attack the verdict. *Smith,* supra. This is not equal to the situation in which a venireman fails to disclose pertinent information when inquiry is made. *Manuel v. State,* 541 P.2d 233 (Okl.Cr.1975).

■ We have on a number of occasions held the fact that a juror personally knew a witness was not alone sufficient to require removal of a juror for cause. *Cook v. State,* 650 P.2d 863 (Okl.Cr.1982); *Parsons v. State,* 603 P.2d 1144 (Okl.Cr.1979); *Bias v. State,* 561 P.2d 523 (Okl.Cr.1977), certiorari denied, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300; *Blozy v. State,* 557 P.2d 451 (Okl.Cr.1976). Prejudice must be shown, which appellant has failed to do, in order to demonstrate error which dictates reversal.

Having failed to demonstrate error, judgment and sentence is AFFIRMED.

BRETT, J., specially concurs.

PARKS, P.J., dissents.

BRETT, Judge: specially concurring.

I feel that it is necessary for me to distinguish this decision from the one in *Tibbetts v. State,* 698 P.2d 942 (Okl.Cr. 1985). In *Tibbetts,* the juror did not make known during voir dire that her son-in-law was a deputy sheriff of Comanche county, or that he was participating in the trial by delivering the defendant to the courtroom. Although in the instant case the juror failed to inform counsel that her daughter-in-law and niece worked for the O.S.B.I., she did state that her own daughter worked for the O.S.B.I. Despite her disclosure, she was left on the jury. The fact that her daughter-in-law, whom Mrs. Hadley had forgotten worked for the O.S.B.I., appeared in the courtroom appears to be insignificant, especially since the O.S.B.I. agent testifying was a technical witness.

Moreover, Mrs. Hadley testified both during voir dire and at the motion for new trial that her family ties would not—and did not—influence her decision.

Had the information concerning the daughter not been provided the defense counsel during voir dire, I would take a different view of this decision. However, insofar as the pertinent information was revealed by the juror, I believe the two cases are sufficiently distinguishable.

PARKS, Presiding Judge, dissenting:

I dissent from the decision in this case. I believe the conviction herein should be reversed and remanded for a new trial based on the rationale contained in *Tibbetts v. State*, 698 P.2d 942 (Okl.Cr.1985).