Manuel PEREZ ENRIQUEZ, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–156.

Court of Criminal Appeals of Oklahoma.

July 30, 1987.

Paula M. Smith, Sp. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Manuel Perez Enriquez, appellant, was tried by jury and convicted of Second Degree Burglary [21 O.S.1981, § 1435], After Former Conviction of Two or More Felonies [21 O.S.1981, § 51(B) ], in Case No. CRF–83–427, in the District Court of Carter County, before the Honorable Woodrow George, District Judge. The jury set punishment at twenty-five (25) years imprisonment. Judgment and sentence was imposed in accordance with the jury's verdict. We reverse.

The appellant raises two assignments of error: first, that he was denied a fair and impartial trial because of juror bias and

prejudice; second, that the jury verdict was not supported by the evidence. Because we reverse based upon the first assignment of error, we do not address the sufficiency of the evidence question.

Twelve prospective jurors were brought to the jury box and sworn in, including juror H.C. On voir dire, the trial judge asked if any juror had been the victim of a burglary, or whether any member of the juror's family had been the victim of a burglary. Juror H.C. did not respond to this inquiry. The prosecution then asked the jurors: "Judge Goerge [sic] has asked if any of you have a close family member, perhaps a close business associate that have been involved with a burglary before. I would like to extend that a step forward. Have any of you been involved with a criminal case in any way? Perhaps as a *victim in a case,* witness in a case; any of you had any of that type of experience? *Any close family members that might have been effected by a criminal case?"* (Emphasis added). Juror H.C. again did not respond to these questions, although she did respond negatively when asked if she had ever had an unpleasant encounter with a police officer which might affect her reception of a police officer's testimony.

The State presented five witnesses: the manager of the store that was burgled in Ardmore on December 11, 1983, the owner of the store, and three police officers. Only Officer Anthony, who saw the burglar through the front window of the store at 1:00 a.m. for two to five seconds while the burglar was on his hands and knees behind a counter in dim light, identified the appellant as the burglar. No other evidence was introduced linking the appellant to the burglary. The defense put on two witnesses: the appellant's sister, who testified that the appellant lived with her in Tulsa from December 3 until the time of his arrest on December 23, 1983, and was watching television in her home on the evening the burglary occurred in Ardmore; and the sister's boyfriend, who testified he also saw the appellant in Tulsa at the time of the burglary in Ardmore. The appellant did not take the stand. After the State and defense rested, the trial was adjourned un-til the following morning. The following morning, before the trial resumed, juror H.C. sent word to the trial judge that she recognized the appellant's sister when she appeared in court but had previously known her by another name. The trial judge did not interview juror H.C. but instructed the jury. The jury retired and returned with a verdict of guilty. Again the trial judge did not question the juror. The jury retired and returned with their recommendation of a twenty-five year sentence. Only after the jury was dismissed did the trial judge interview juror H.C..

Juror H.C. revealed she was a victim of a felony committed by the appellant's sister. The juror did not recognize the witness by name at the start of trial because she had previously known the witness by another name, but recognized her when she took the stand. The witness and the juror's husband had earlier been married to each other. After the witness' ex-husband married juror H.C., the witness forged a check on the juror's bank account and imposed on her ex-husband to cash the check. The juror's husband was imprisoned for Uttering a Forged Instrument and the witness was placed on probation on that charge. The juror also revealed that the witness was pregnant at the time of the felony, allegedly by the juror's husband through an extra-marital affair. Thus, the juror was highly prejudiced towards the witness.

Juror H.C. was asked if she had formed an opinion about the witness, to which she responded: "Well, I had known her since that time. I know what she was like then. When she was testifying I knew she wasn't telling the truth." When asked whether she "didn't believe anything [the witness] testified to," the juror responded "Well, true. I didn't believe it because of my experience with her." When asked if her decision in the case would have been any different had she not had a prior experience with the witness, juror H.C. responded, "No, it would have been the same because, you know, because he [the appellant] was out of one thing into the other one so I figure he would continue to keep

doing it. That's why my decision was what it was."

The purpose of voir dire examination is to ascertain whether there are grounds to challenge prospective jurors for either actual or implied bias and to facilitate the intelligent exercise of peremptory challenges. *Phillips v. State*, 650 P.2d 910, 914 (Okl.Cr.1982). Depriving defense counsel of information that could lead to the intelligent exercise of a peremptory challenge is a denial of an appellant's right to a fair and impartial jury. *Bass v. State*, 733 P.2d 1340, 1341 (Okl.Cr.1987). The failure of juror H.C. to come forward with the above information and, at least, be examined during voir dire to determine if she was biased or prejudiced in any way is sufficient denial of the appellant's right to a fair and impartial jury to require reversal. *Tibbetts v. State*, 698 P.2d 942, 947 (Okl.Cr.1985). *See also Bass, supra* at 1342.

The State makes the unique assertion that juror H.C. was biased and prejudiced towards the witness, not the appellant, and her bias did not extend to or affect the right of the appellant to receive a fair and impartial trial. Based upon the facts of this case, such assertion is patently absurd. The appellant's sole defense to the charge of second degree burglary was he could not have committed the burglary because he was in Tulsa with his sister at the time of the crime in Ardmore. The appellant's sister was his primary alibi witness, and his defense stood or fell with the credibility of his sister's testimony. Juror H.C. admitted she would not believe the sister, no matter what she testified, because of the juror's previous experience with the witness. All doubts regarding juror impartiality must be resolved in favor of the accused. *Bass, supra* at 1342. *See also Tibbetts, supra* at 946. This rule is intended to apply to both the trial courts and the Court of Criminal Appeals. *Hawkins v. State*, 717 P.2d 1156, 1158 (Okl.Cr.1986). Furthermore, Article II, § 19, of the Oklahoma Constitution guarantees a defendant in a felony proceeding a jury of twelve, and Art. II, § 20, guarantees a defendant an impartial jury. Read together, these two sections of the Oklahoma Constitution guarantee a defendant in a felony proceeding a jury of twelve unbiased and impartial jurors, not eleven or some lesser number. One biased or prejudiced juror is enough to require remand to assure the appellant receives a fair trial. *Tibbetts, supra* at 946. While we applaud the courage and candor juror H.C. displayed by informing the trial court of her previous experience with the witness, such belated information does not cure her failure to timely reveal her bias and prejudice so that defense counsel could either challenge her for cause or intelligently exercise his last remaining peremptory challenge. Therefore, the judgment and sentence of the district court is REVERSED and REMANDED for a new trial.

BRETT, P.J., concurs.

BUSSEY, J., concurs in result.